## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SCOTT LEVY, CHRISTOPHER KLUCSARITS AND MICHAEL SANDERS, individually and on behalf of all other similarly-situated individuals, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 3:08-01289 (PCD) |
| WORLD WRESTLING ENTERTAINMENT, INC., | ) ) ) | |
| Defendant. | ) ) | September 29, 2008 |

## WORLD WRESTLING ENTERTAINMENT INC.'S
## <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

Defendant World Wrestling Entertainment, Inc. ("WWE") hereby submits the following

Memorandum in Support of its Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ.

P. 12(b)(6).  For the reasons stated below, the Court should dismiss plaintiffs' Complaint in its

entirety for failure to state a claim upon which relief can be granted.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... iii

I.   SUMMARY OF ARGUMENT .................................................................. 1

II.  BACKGROUND ...................................................................................... 2

  A.   The Allegations Contained In Plaintiffs' Complaint ............................ 2

  B.   Plaintiffs' Booking Contracts With WWE ........................................... 4

     1.   Terms and provisions of Plaintiffs' Booking Contracts ............................. 4

III. STANDARD OF REVIEW ........................................................................ 7

IV.  ARGUMENT .............................................................................................. 8

  A.   Plaintiffs' Complaint Fails To State A Claim for Breach Of Contract As A
       Matter Of Law ....................................................................................... 8

     1.   Plaintiffs cannot state a claim for breach of contract based on
          alleged failure to comply with federal or state tax withholding
          requirements ................................................................................ 8

     2.   Plaintiffs cannot state a claim for breach of contract based on
          failure to provide the rights, incidents and benefits of employment
          because the Booking Contracts do not provide for such benefits ........... 11

  B.   Count II of Plaintiffs' Complaint Fails To State A Claim For Unjust
       Enrichment ............................................................................................ 13

  C.   Plaintiffs' Breach of Contract And Unjust Enrichment Claims Are Barred
       by the Applicable Statutes of Limitation ............................................. 15

  D.   To The Extent That Plaintiffs' Claims Include State Law Components Or
       Are Considered To Be State Law Claims, They Must Be Dismissed By
       Application Of Federal Law ................................................................... 17

     1.   Plaintiffs' state law claims constitute impermissible indirect
          attempts to plead a private right of action under the federal and
          state tax laws ............................................................................... 17

     2.   To the extent plaintiffs' claims relate to the rights, incidents and
          benefits of employment, plaintiffs' state law claims are pre-empted
          by ERISA ....................................................................................... 22

  E.   To the Extent Plaintiffs Seek to Amend the Complaint to Allege Direct
       Claims Under ERISA, Plaintiffs' Claims Must Be Dismissed ............ 26

     1.   Plaintiffs' claims are barred by the applicable statute of limitations ....... 27

     2.   Plaintiffs have failed to plead facts sufficient to satisfy ERISA's
          strict exhaustion requirement ........................................................ 30

     3.   Plaintiffs have failed to plead sufficient allegations to support
          standing to pursue their claims ...................................................... 31

F.      Where the Named Plaintiffs Cannot State Individual Causes of Action, Plaintiffs' Class Claims Cannot Stand As a Matter of Law................................. 33

**V.     CONCLUSION** ........................................................................................... 34

## TABLE OF AUTHORITIES

### CASES

Aetna Health Inc. v. Davila, 542 U.S. 200 (2004).................................................. 22-26

Alexander v. Sandoval, 532 U.S. 275 (2001) ...............................................................19

Alfarone v. Bernie Wolff Constr., 788 F.2d 76 (2d Cir. 1986) ....................................30

Alstom Power, Inc. v. Schwing Am., Inc., No. 3:04cv1311, 2006 WL 2642412 (D. Conn. Sept. 14, 2006) ........................................................................................................13, 15

Ambris v. Bank of N.Y., No. 96 Civ. 61, 1998 WL 702289 (S.D.N.Y. Oct. 7, 1998)..................28

Amoco Oil Co. v. Liberty Auto & Elec. Co., 810 A.2d 259 (Conn. 2002) ..................................16

Asylum Hill Problem Solving Revitalization Ass'n v. King, 890 A.2d 522 (Conn. 2006) .....18, 19

Baraschi v. Silverwear, Inc.,  No. 01 Civ. 11263 (MBM), 2002 WL 31867730 (S.D.N.Y. Dec. 23, 2002)...........................................................................................................21

Bell Atlantic v. Twombly, 127 S. Ct. 1955 (2007)...................................................................7, 12

Bloom v. United States Gov't, No. 02Civ.2352DABDF, 2003 WL 22327163 (S.D.N.Y. Oct. 10, 2003) .............................................................................................................29, 30

Blum v. Yaretsky, 457 U.S. 991 (1982) ....................................................................................33

Book v. Lupinacci, No. 3:04CV1661 (PCD), 2006 WL 1182275 (D. Conn. Apr. 28, 2006) ....................................................................................................................................29

Brennan v. Metro. Life Ins. Co., 275 F. Supp. 2d 406 (S.D.N.Y. 2003) .........................16, 28, 29

Broder v. Cablevision Sys. Corp., 418 F.3d 187 (2d Cir. 2005)................................. 5, 8, 9, 17-21

Callahan v. Unisource  Worldwide, Inc., No. CIVA 3:01CV1205 (CFD), 2003 WL 1714369 (D. Conn. Mar. 27, 2003)..................................................................................26

Carey v. IBEW Local 363 Pension Plan, 201 F.3d 44 (2d Cir. 1999)....................................27, 28

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002)..................................................4, 5

Chemung Canal Trust Co. v. Sovran Bank/Maryland, 939 F.2d 12 (2d Cir. 1991) .....................32

Chisholm v. United of Omaha Life Ins. Co., 514 F. Supp. 2d 318 (D. Conn. 2007) ...................15

Cort v. Ash, 422 U.S. 66 (1975) ...................................................................................18

Curcio v. Hartford Fin. Servs. Group., 469 F. Supp. 2d 18 (D. Conn. 2007)..............23, 25, 26, 27

Davenport v. Harry N. Abrams, Inc., 249 F.3d 130 (2d Cir. 2001)..........................................28, 31

Davis v. United Air Lines, Inc., 575 F. Supp. 677 (E.D.N.Y. 1983).......................................17, 21

Denton v. First Nat'l Bank, 765 F. 2d 1295 (5th Cir. 1985).........................................................30

DiGiovanni v. City of Rochester, 680 F. Supp. 80 (W.D.N.Y. 1988)...........................................21

Dirienzo Mech. Contractors, Inc. v. Salce Contracting Assocs., Inc., No.
CV054015913S, 2007 WL 4710949 (Conn. Super. Ct. Dec. 12, 2007)........................................13

Downes v. J.P. Morgan Chase & Co., No. 03 Civ. 8991, 2004 WL 1277991 (S.D.N.Y.
June 8, 2004).......................................................................................................17, 28

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).......................................................32

Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)...................................32

Gianetti v. Blue Cross& Blue Shield of Conn., Inc., No. 3:07cv01561 (PCD), 2008 WL
1994895 (D. Conn. May 6, 2008) ................................................................... 5, 15, 22-30

Giannamore v. Scopino, Nos. CV054003413S, CV064009211S, 2007 WL 4107709
(Conn. Super. Ct. Nov. 1, 2007)....................................................................................13

Grochowski v. Phoenix Constr., 318 F.3d 80 (2d Cir. 2003) .................................................17, 21

Johnson v. Sears Roebuck & Co., No. 3:05-CV-139(JCH), 2007 WL 2491897 (D. Conn.
Aug. 29, 2007) .......................................................................................................11, 12

Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588 (2d Cir. 1993)...............................30

Male v. Tops Friendly Markets, No. 07-CV-6573, 2008 WL 1836948 (W.D.N.Y. Apr.
22, 2008) ...............................................................................................................29

Mason v. Am. Tobacco Co., 346 F.3d 36 (2d Cir. 2003) ......................................................3, 4, 8

McDonald v. Southern Farm Bureau Life Ins. Co., 291 F.3d 718 (11th Cir. 2002)....................21

McKenna v. Wright, 386 F.3d 432 (2d Cir. 2004) .....................................................................15

McKenzie v. Dow Jones & Co., Inc., No. 08 Civ. 3623 (SAS), 2008 WL 2856337 (S.D.N.Y. July 22, 2008) .................................................................................29

Meaney v. Conn. Hosp. Ass'n, Inc., 735 A.2d 813 (1999) ................................13, 14, 15

Messier v. Southbury Training School, No. 3:94-CV-1706(EBB), 1999 WL 20910 (D. Conn. Jan. 5, 1999) ......................................................................................33

Miles v. New York State Teamsters Conference Pension & Ret. Fund, 698 F.2d 593 (2d Cir. 1983) .....................................................................................................28

OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp., 503 F. Supp. 2d 490 (D. Conn. 2007) .......................................................................7, 8, 13, 14, 15

O'Shea v. Littleton, 414 U.S. 488 (1974).........................................................................33

Office of Labor Relations v. New England Health Care Employees Union, District 1199, 951 A.2d 1249 (Conn. 2008) ..................................................................9, 10, 12

Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67 (2d Cir. 1998) ............................15

In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig., No. 05-MD-1720, 2008 WL 115104 (E.D.N.Y. Jan. 8, 2008) ..........................................5

Plumbing Indus. Bd. v. Howell Co., 126 F.3d 61, 66 (2d Cir. 1997) ..........................22

Potter v. ICI Americas, Inc., 103 F. Supp. 2d 1062 (S.D. Ind. 1999)...........................31

Provencher v. Town of Enfield, 936 A.2d 625 (Conn. 2007)..................................18, 19

Rollins v. People's Bank Corp., 925 A.2d 315 (Conn. 2007) ......................................18

Saladino v. I.L.G.W.U. Nat'l Ret. Fund, 754 F.2d 473 (2d Cir. 1985).........................32

Santiago v. Owens-Illinois, Inc., 477 F. Supp. 2d 493 (D. Conn. 2007) ................11, 12

Seabury v. City of N.Y., No. 06-CV-1477, 2006 WL 1367396 (E.D.N.Y. May 18, 2006)....20, 21

Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26 (1976)...................................33

Sorri v. Bell Atlantic, 45 F. App'x 80 (2d Cir. 2002)....................................................29

Spilky v. Helphand, No. 91 Civ. 3045, 1993 WL 159944 (S.D.N.Y. May 11, 1993)..................21

Tolbert v. Conn. Gen. Life Ins. Co., 778 A.2d 1 (Conn. 2001)....................................................16

United States v. Space Hunters, Inc., 429 F.3d 416 (2d Cir. 2005)..............................................15

United States v. Spero, 331 F.3d 57 (2d Cir. 2003)......................................................................15

White v. White Rose Food, 62 F. Supp. 2d 878 (E.D.N.Y. 1999)................................................21

Wolf v. Coca-Cola Co., 200 F.3d 1337 (11th Cir. 2000) .............................................................25

Yak v. Bank Brussels Lambert, No. 99 Civ 12090, 2002 WL. 31132963 (S.D.N.Y.  Sept.
26, 2002) .....................................................................................................................................31

## STATUTES

26 U.S.C. § 3101 .......................................................................................................................9, 20

26 U.S.C. § 3102 .......................................................................................................................9, 20

26 U.S.C. § 3102(b) ......................................................................................................................20

26 U.S.C. § 3301 ......................................................................................................................9,  20

26 U.S.C. § 3402 ......................................................................................................................9, 20

26 U.S.C. § 3403 ...........................................................................................................................20

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. ............1, 2, 11,
........................................................................................................................................... 23-33

29 U.S.C. § 1001(b) ......................................................................................................................22

29 U.S.C. § 1002(7) ..................................................................................................................23,  32

29 U.S.C. § 1002(8) ......................................................................................................................24

29 U.S.C. § 1132(a)(1)(B) ..................................................................................................23, 24, 27

29 U.S.C. § 1144(a) ......................................................................................................................23

Conn. Gen. Stat. § 12-705..............................................................................................................18

Conn. Gen. Stat. § 12-707 ...................................................................................18

Conn. Gen. Stat. § 52-576 ...................................................................................15

Conn. Gen. Stat. § 52-576(a) ..............................................................................27


Fed. R. Civ. P. 12(b)(6) ........................................................................................ 7

I.      **SUMMARY OF ARGUMENT**

Defendant WWE now moves the Court to dismiss plaintiffs' Complaint, in its entirety, for failure to state a cause of action upon which relief can be granted.  First, the Booking Contracts upon which plaintiffs base their breach of contract claims do not provide for the relief requested by plaintiffs.  The plain and unambiguous language of the Booking Contracts does not obligate WWE to pay plaintiffs' taxes or make withholdings to pay such taxes, nor obligate WWE to provide plaintiffs with the "rights, incidents and benefits of employment."  Second, plaintiffs' unjust enrichment claims fail as a matter of law because all aspects of plaintiffs' relationships with WWE are governed by their Booking Contracts, including specifically those aspects of the relationship at issue in the present litigation.  Third, plaintiffs' breach of contract and unjust enrichment claims are barred by the applicable statutes of limitation.  Fourth, plaintiffs' state law claims are disguised attempts to create a private cause of action based upon the application of federal and/or state tax law and to circumvent the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.  To the extent that plaintiffs' state law claims are dependent upon federal and/or state tax law, the claims constitute an impermissible "end-run" around the lack of a private right of action under federal and state tax law.  The law in the Second Circuit is clear that such attempts to circumvent federal law are prohibited. Connecticut state law would reach the same conclusion under the analysis employed by the Connecticut Supreme Court to determine whether to imply a private right of action based on statutes which do not expressly provide such a private right of action.  Furthermore, to the extent that plaintiffs' breach of contract and unjust enrichment claims depend upon alleged entitlement to the "rights, benefits, and incidents of employment," plaintiffs' claims are pre-empted by ERISA.  Fifth, even if plaintiffs sought leave to amend their state law claims as direct claims

under ERISA, such an amendment would be futile since their claims must be dismissed for failure to file their Complaint within the applicable limitations period, for failure to allege exhaustion of administrative remedies, and for failure to allege any facts to support standing to bring direct claims under ERISA.  Finally, because plaintiffs' individual claims against WWE fail, plaintiffs cannot, as a matter of constitutional standing, continue to assert putative class claims on behalf of absent class members.  Therefore, the Court should dismiss with prejudice plaintiffs' individual claims and putative class claims.

## II.   BACKGROUND

### A.   The Allegations Contained In Plaintiffs' Complaint

The Complaint was brought by three individuals who no longer perform for WWE.  In 20 sparse paragraphs,[1] the three plaintiffs attempt to allege claims on their behalf and further claim they are representative of all individuals who were signatories to a Booking Contract with WWE "at any time within six years of July 16, 2008," which is the date plaintiffs brought suit. Complaint at ¶ 8.

The gravaman of the Complaint is that the named plaintiffs and purported class members signed Booking Contracts with WWE which allegedly "improperly characterized plaintiffs and the other wrestlers employed by defendant WWE as independent contractors." Id. at ¶ 6.  The Complaint alleges that WWE exercised total control over the wrestlers' performances and includes various factual allegations to seek to demonstrate such control.  Id. at ¶ 4.  Following these allegations, plaintiffs attempt to plead exactly two counts.  The first count is a breach of

---

[1] The Complaint paragraphs are misnumbered.  The first count, if numbered correctly, should end with paragraph 19.  The second count should begin with paragraph 20 and end with 22.  Herein, we refer to paragraphs of the Complaint by the correct number and not the incorrect system employed in the Complaint so as to avoid confusion.

contract count based on an alleged single term in their Booking Contracts which is only partially recited. The second count is styled as an unjust enrichment count.

In Count I, plaintiffs allege that the Booking Contract "specified that WWE would make all withholding as required by law," and then claim that, due to the alleged misclassification of the plaintiffs as "independent contractors," WWE failed to make the withholding "as required by law." Id. at ¶ 16. This allegation is the only specific allegation of a breach of the Booking Contracts. Following this assertion of alleged breach, Count I alleges in vague and conclusory fashion that WWE "failed to provide plaintiffs and the other wrestlers which it employed with the benefits of employment paid for by such withholding." Id. at ¶ 17. The Complaint does not specify what those benefits are alleged to be, nor indicate what benefits of employment are paid for by monies not withheld to pay taxes. Id. In the next paragraph, and again without citing to any actual provision of the Booking Contracts said to have been breached, plaintiffs allege that WWE has denied plaintiffs ". . . the rights, incidents and benefits of such employment." Id. at ¶ 18. Again, the "rights, incidents and benefits of such employment" being referred to by plaintiffs are not specified anywhere. Although styled as a breach of contract claim, Count I also does not identify any provision of the Booking Contracts requiring WWE to pay whatever "rights, incidents and benefits" are alleged to have been denied plaintiffs.

The second count contains even thinner allegations in exactly two paragraphs. One paragraph summarily claims that the Booking Contracts "are a sham and void" but nowhere identifies any cognizable legal theory to render the written Booking Contracts "void," nor pleads any facts necessary to "void" a formal written contract.[2] The next and last paragraph contains no

---

[2] On a motion to dismiss, this Court is to accept as true all of plaintiffs' factual allegations and draw all reasonable inferences in favor of the plaintiffs. However, there is no presumption of truthfulness to be given to "legal conclusions, deductions or opinions couched as factual allegations." Mason v. Am. Tobacco Co., 346 F.3d 36 39

factual allegations whatsoever and merely states the conclusion that the plaintiffs were improperly characterized as independent contractors and from that conclusion then asserts that WWE has been unjustly enriched to plaintiffs' detriment by its receipt of the benefit of the services rendered by the plaintiffs and the wrestlers employed by defendant without payment of "proper compensation." Id. at ¶ 22. (erroneously numbered 16). The Complaint nowhere alleges what the "proper compensation" should have been nor identifies any cognizable theory whereby compensation paid on a written contract can be renegotiated through a lawsuit after all performance has been rendered.

Nowhere does the Complaint allege that WWE failed to pay these plaintiffs, or any class member, the compensation WWE actually agreed to pay in the Booking Contracts. Likewise, the Complaint does not allege that WWE ever agreed to pay these plaintiffs, or other class members, whatever "rights and benefits" these plaintiffs are seeking by the unjust enrichment claims.

> **B.** **Plaintiffs' Booking Contracts With WWE**
>
> > **1.** **Terms and provisions of Plaintiffs' Booking Contracts**

Although the Complaint refers to the Booking Contracts between WWE and the plaintiffs, those Booking Contracts are not actually attached to the Complaint. The Court may, however, consider evidence outside of the pleadings on a motion to dismiss, particularly documents, where those documents are incorporated by reference into the complaint or where "the complaint relies heavily upon its terms and effect . . . render[ing] the document integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (finding contracts between recording artists and record companies "integral" to complaint and thus

---

(2d Cir. 2003) (citations omitted)  The allegations that the Booking Contracts are a "sham and void" are, therefore, fundamentally meaningless for purposes of this motion to dismiss.

appropriate for consideration at the motion to dismiss stage) (internal quotation marks and citation omitted); see also Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005); Gianetti v. Blue Cross & Blue Shield of Conn., Inc., No. 3:07cv01561 (PCD), 2008 WL 1994895, at *8 n.4 (D. Conn. May 6, 2008) (court may consider documents incorporated by reference in Complaint as well as matters over which judicial notice may be taken on motion to dismiss); In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig., No. 05-MD-1720, 2008 WL 115104, at *8 (E.D.N.Y. Jan. 8, 2008).  The plaintiffs' Booking Contracts are not only embraced by and referenced in plaintiffs' Complaint, but they are integral to, and form the explicit basis of, plaintiffs' claims against WWE.  Accordingly, the Court may consider the Booking Contracts and the terms therein in connection with the instant motion to dismiss.[3]

      The Booking Contracts between WWE and the three plaintiffs differ as to the amounts of guaranteed compensation and length of contract, yet share certain provisions relevant to the Complaint, which must be highlighted.

      In Section 7 of each Booking Contract, the agreement of the parties as to the compensation to be paid the plaintiffs by WWE is set forth in extensive detail.  Section 7 specifies the manner in which compensation for various matters was to be determined and the specifics for which plaintiffs would be compensated.  In 22 paragraphs and sub-paragraphs, the Booking Contract specifies not merely the minimum annual compensation promised by WWE to the plaintiffs, but also how compensation was to be determined for house shows, televised events, pay-per-views, royalties on the sale of licensed products, and the like.  Near the end of

---

[3] Thus, plaintiff Levy's Booking Contract is attached hereto as Exhibit A.  Levy's Booking Contract was effective August 27, 2000 and was for an initial term of three years.  Ex. A, Section 6.1.  Plaintiff Sanders' Booking Contract is attached hereto as Exhibit B.  Sanders' Booking Contract was effective August 3, 2001 and was for an initial term of one year.  Ex. B, Section 6.1.  Plaintiff Klucsarits' Booking Contract is attached hereto as Exhibit C.  Klucsarits' Booking Contract was effective March 25, 2002 and was for an initial term of one year.  Ex. C, Section 6.1.

Section 7, and following the specific provisions detailing the payments to be made to each of

these plaintiffs, Section 7.11 of the Booking Contracts provides:

> All payments made to WRESTLER are in full without withholding, except where required by law.  After the end of each calendar year, PROMOTER shall issue to WRESTLER Internal Revenue Service Form 1099 showing all payments to WRESTLER during that calendar year.[4]

In subsequent provisions of the Booking Contract, under a section styled "Wrestler's

Obligation," the parties further explicitly spelled out the corresponding understanding of the

parties regarding tax obligations given that WWE was obligated to make all payments in full to

the plaintiffs without withholding.  Thus, Section 9.11 provides:

> 9.11 – WRESTLER shall be responsible for payment of all of WRESTLER's own Federal, state or local income taxes; all social security, FICA and FUTA taxes, if any, as well as all contributions to retirement plans and programs, or other supplemental income plan or program that would provide WRESTLER with personal or monetary benefits upon retirement from professional wrestling.

Still other provisions of the contractual undertaking of the parties spell out the Wrestler's

obligations regarding insurance, health benefits and the like.

> 9.12(a) – WRESTLER shall be responsible for his own commercial general liability insurance, worker's compensation insurance, professional liability insurance, as well as any excess liability insurance, as WRESTLER deems appropriate to insure, indemnify and defend WRESTLER with respect to any and all claims arising out of WRESTLER's own acts, transactions, or conduct.

> 9.13(a) – WRESTLER may at his election obtain health, life and/or disability insurance to provide benefits in the event of physical injury arising out of WRESTLER's professional activities; and WRESTLER acknowledges that PROMOTER shall not have any responsibility for such insurance or payment in the event of physical injury arising out of WRESTLER's professional activities.

> 9.13(b) – In the event of physical injury arising out of WRESTLER's professional activities, WRESTLER acknowledges that WRESTLER is not entitled to any worker's compensation coverage or similar benefits for injury, disability, death or loss of wages; and WRESTLER shall make no claim against PROMOTER for such coverage or benefit.

---

[4] This is the only section of the Booking Contract cited by plaintiffs as the linchpin of Count I, albeit only in part.

Additionally, each of the plaintiffs agreed to other terms going directly to the viability of the claims asserted here.  In Section 10.1, under Warranty provisions, each wrestler "represents, warrants, and agrees that WRESTLER is free to enter into this Agreement and to grant the rights and licenses herein granted to PROMOTER . . .."  Finally, in Section 13.1, each of the plaintiffs expressly acknowledged and confirmed that they were independent contractors and would be treated and compensated as such:

> Nothing contained in this Agreement shall be construed to constitute WRESTLER as an employee, partner or joint venturer of PROMOTER, nor shall WRESTLER have any authority to bind PROMOTER in any respect.  WRESTLER is an independent contractor and WRESTLER shall execute and hereby irrevocably appoints PROMOTER attorney-in-fact to execute, if WRESTLER refuses to do so, any instruments necessary to accomplish or confirm the foregoing or any and all of the rights granted to PROMOTER herein.

Finally, in Section 14.2, each of the plaintiffs agreed as follows:

> WRESTLER acknowledges and agrees that its agreement to be bound by the terms hereof is a material condition of PROMOTER's willingness to use and continue to use WRESTLER's services.

## III.    STANDARD OF REVIEW

The court should grant WWE's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) because the facts, as alleged in plaintiffs' Complaint, do not support a legal right to recovery under the claims asserted.  See Fed. R. Civ. P. 12(b)(6).  The United States Supreme Court has instructed that blanket assertions of entitlement to relief do not satisfy Fed. R. Civ. P. 12(b)(6) and that the factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all of the Complaint's allegations are true."  See Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1959 (2007).  Thus, to defeat a motion to dismiss, a plaintiff must plead facts that set forth a "plausible" right to recovery.  See id. at 1966; OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp., 503 F. Supp. 2d 490, 502 (D. Conn. 2007)

(to defeat a motion to dismiss a complaint must have factual allegations sufficient to render a claim for relief plausible).  Legal conclusions, deductions or opinions couched as factual allegations are not entitled to any deference or the presumption of truthfulness afforded to well-pled facts when adjudicating a motion to dismiss.  Mason v. Am. Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003).

## IV.   ARGUMENT

### A.   Plaintiffs' Complaint Fails To State A Claim for Breach Of Contract As A Matter Of Law

#### 1.   Plaintiffs cannot state a claim for breach of contract based on alleged failure to comply with federal or state tax withholding requirements

Plaintiffs predicate their breach of contract claims in Count I on a partial quotation of Section 7.11 of the Booking Contracts, which specifies that all payments made to the plaintiffs were to be "in full without withholding, except where required by law."  See Complaint at ¶ 16.  Plaintiffs' characterization of that provision, however, does not comport with the actual language of the Booking Contracts. [5]  The Booking Contracts unambiguously and expressly provide that the plaintiffs themselves were "responsible for payment of all of [their] own Federal, state or local income taxes; all social security, [and] FICA and FUTA taxes . . . ."  See [Levy Booking Contract] Ex. A, Section 9.11; [Klucsarits Booking Contract] Ex. B, Section 9.11; [Sanders Booking Contract] Ex. C, Section 9.11.

These obligations assumed by the plaintiffs are perfectly consistent with other provisions of the Booking Contracts by which each of the plaintiffs agreed they were "independent contractors" and not employees.  See [Levy Booking Contract] Ex. A, Section 13.1; [Klucsarits

---

[5] To the extent that the Complaint relies on the terms of plaintiffs' Booking Contracts, the Court should not accept plaintiffs' description of the terms, but should look to the Booking Contracts themselves.  See Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005).

Booking Contract] Ex. B, Section 13.1; [Sanders Booking Contract] Ex. C, Section 13.1.  Each plaintiff further represented they were free to enter into the Booking Contracts and that their willingness to be bound by the terms of the Booking Contracts, which included their acceptance and acknowledgement of independent contractor status, was a "material condition" to WWE's willingness to use their services.  Id. at Sections 10.1, 13.1.  Having agreed to these provisions, each plaintiff thereafter was compensated as an independent contractor, and there is precisely no contention anywhere that WWE did not pay these plaintiffs every penny they were contractually entitled to receive.

The federal tax laws requiring employers to make tax withholdings apply only with respect to "employees" hired by those employers and do not impose any withholding requirements on those who contract with "independent contractors."  See 26 U.S.C. § 3402 (requiring employers to collect and withhold payments from their employees' wages to satisfy employees' shares of the federal income tax); 26 U.S.C. §§ 3101, 3102 (imposing a tax on employees under the Federal Insurance Contributions Act ("FICA") based on wages paid to employees); 26 U.S.C. § 3301 (imposing Federal Unemployment Tax Act ("FUTA") tax liability on employers based upon wages paid to its employees).  Under federal tax law, therefore, WWE was not, and could not be, "required by law" to make any withholdings from the plaintiffs' wages as each of the plaintiffs agreed to be classified and treated as an independent contractor under the terms of the Booking Contracts.

To determine the meaning of contractual provisions, the Court must examine the entire integrated agreement and take into account all provisions of that agreement.  See Broder, 418 F.3d at 197; Office of Labor Relations v. New England Health Care Employees Union, District 1199, 951 A.2d 1249, 1254 (Conn. 2008) ("when interpreting a contract, we must look at the

contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result" (internal quotations omitted)). When read as a whole, the Booking Contracts express the clear intention of the parties that WWE was <u>not</u> obligated to make any tax withholdings to satisfy plaintiffs' federal and state tax obligations and that plaintiffs <u>were</u> obligated to pay their own taxes.  The express provisions of plaintiffs' Booking Contracts clearly place the responsibility for paying "all of [plaintiffs'] own Federal, state or local income taxes; all social security, [and] FICA and FUTA taxes" on plaintiffs.  In short, the plain and ordinary language of the Booking Contracts leaves little doubt that the parties intended that plaintiffs pay their own taxes and that WWE would not incur or pay any tax obligations on plaintiffs' behalf.  See <u>Office of Labor Relations</u>, 951 A.2d at 1254 ("Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms.  A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity.") (internal quotation marks and citation omitted).

Indeed, such an interpretation of the Booking Contracts holds true regardless of plaintiffs' desire to rewrite and renegotiate fully performed contracts by now claiming they should have been treated as employees.  Simply put, these plaintiffs cannot escape their contractual obligations undertaken to WWE to pay their own taxes, as reflected on the Forms 1099 issued to them each year.  Indeed, to facilitate the plaintiffs' ability to discharge that contractual obligation to WWE and their corresponding obligations to taxing authorities, the Booking Contracts provided that WWE would make all payments in full without withholding. Had WWE withheld any payments for tax liability expressly assumed by the plaintiffs as part of their independent contractor status, WWE would have breached the Booking Contracts and interfered with the plaintiffs' obligation and ability to pay those taxes.

It is axiomatic that without an express provision of the Booking Contracts to support a claim for a breach of contract, plaintiffs' claims must fail as a matter of law.  See Johnson v. Sears Roebuck & Co., No. 3:05-CV-139(JCH), 2007 WL 2491897, at *3 (D. Conn. Aug. 29, 2007) (existence of an agreement is a necessary element of a breach of contract claim under Connecticut law); Santiago v. Owens-Illinois, Inc., 477 F. Supp. 2d 493, 501-02 (D. Conn. 2007) (existence of a "clear and definite promise" is necessary to support a breach of contract claim under Connecticut law).  Plaintiffs, therefore, have not stated a cause of action for breach of contract and the Court should dismiss plaintiffs' claims to the extent they are based upon WWE's failure to make any tax withholdings.

> **2.     Plaintiffs cannot state a claim for breach of contract based on failure to provide the rights, incidents and benefits of employment because the Booking Contracts do not provide for such benefits**

In Count I, plaintiffs also vaguely allege nothing more than the conclusion that WWE breached their Booking Contracts by denying them "the rights, incidents and benefits of such employment."  Complaint at ¶ 17.  However, the Complaint completely fails to allege any specific provision of the Booking Contracts by which WWE agreed to pay the "rights, incidents and benefits of such employment"—whatever that phrase means.[6]

Not one provision of plaintiffs' Booking Contracts expressly references, or even implies, any obligation on the part of WWE to provide such rights or benefits; nor does any provision of the plaintiffs' Booking Contracts reference ERISA or any federal or state law providing for "rights, incidents and benefits of employment."  Instead, plaintiffs' Booking Contracts expressly provide that each of the plaintiffs was responsible for "all contributions to retirement plans and

---

[6] To the extent that the Complaint refers to rights and benefits subject to ERISA, which governs most voluntary pension, benefits, and health plans offered by private employers, or rights and benefits provided under similar laws (i.e., state worker's compensation laws), plaintiffs' claims should be dismissed for the reasons stated in Section IV.E of this Brief.

programs, or other supplemental income plan or program that would provide [him] with personal or monetary benefits upon retirement from professional wrestling," for obtaining his own worker's compensation insurance, and for electing to "obtain health, life and/or disability insurance."  See [Levy Booking Contract] Ex. A, Sections 9.11-9.13; [Klucsarits Booking Contract] Ex. B, Sections 9.11-9.13; [Sanders Booking Contract} Ex. C, Sections 9.11-9.13.  In other words, the Booking Contracts clearly and unambiguously state that the plaintiffs, not WWE, were contractually obligated to procure any such benefits.  The plain, ordinary, and unambiguous terms of these provisions makes clear that WWE simply did not contractually agree to provide plaintiffs with "the rights, incidents and benefits of employment" under the Booking Contracts.  See Office of Labor Relations, 951 A.2d at 1254 (courts must interpret contractual provisions pursuant to plain and unambiguous language of the contract as a whole).

Plaintiffs, accordingly, cannot state a claim for breach of contract based on an alleged failure by WWE to provide plaintiffs with rights, incidents and benefits of employment, where no obligation to provide any such rights, incidents and benefits are found, suggested or even alleged to exist in the actual terms of the Booking Contracts.  See Johnson, 2007 WL 2491897, at *3; Santiago, 477 F. Supp. 2d at 501-02 (dismissing claims where there was "no evidence of a clear and definite promise sufficient to support a breach of contract claim").  Lacking any such contractual promise, plaintiffs clearly cannot claim WWE breached a non-existent provision.  In fact, plaintiffs have not only failed to allege sufficient facts to support a "plausible," or even possible, right to relief under the Booking Contracts based on these so-called rights, incidents and benefits of employment; the Booking Contracts on which they rely specifically negate the existence of such promises.  See Twombly, 127 S.Ct. at 1966.  The Court should, therefore, dismiss plaintiffs' breach of contract claims in Count I.

**B.** **Count II of Plaintiffs' Complaint Fails To State A Claim For Unjust Enrichment**

Under Connecticut law, a claim for unjust enrichment cannot stand where an express contract governs the relationship between the parties to the lawsuit and covers the same subject-matter that forms the basis for the unjust enrichment claim. See Meaney v. Conn. Hosp. Ass'n, Inc., 250 Conn. 500, 516-523, 735 A.2d 813, 822-25 (1999) (unjust enrichment claims failed where plaintiff was bound to perform services under express employment contract and was compensated consistent with terms of said contract). Alstom Power, Inc. v. Schwing Am., Inc., No. 3:04cv1311, 2006 WL 2642412, at *5 (D. Conn. Sept. 14, 2006) ("where an express contract exists, restitution for unjust enrichment, a quasi contractual remedy, is unavailable"); Dirienzo Mech. Contractors, Inc. v. Salce Contracting Assocs., Inc., No. CV054015913S, 2007 WL 4710949, at *2 (Conn. Super. Ct. Dec. 12, 2007) (a "[c]laim for unjust enrichment is not available . . . where there is an enforceable express contract between the parties") (internal quotation marks and citation omitted); Giannamore v. Scopino, Nos. CV054003413S, CV064009211S, 2007 WL 4107709, at *2 (Conn. Super. Ct. Nov. 1, 2007). Similarly, the law in the Second Circuit instructs that "it is impermissible . . . to seek damages in an unjust enrichment action . . . where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties." See OBG Tech. Servs., 503 F. Supp. 2d at 512 (internal quotation marks and citation omitted). Indeed, Connecticut law is clear that a plaintiff cannot maintain an unjust enrichment claim even "in the alternative" to a breach of contract claim where an express contract exists and governs the subject matter at issue. See id. at 513; Meaney, 735 A.2d at 822-23; Alstom Power, Inc., 2006 WL 2642412, at *5; Dirienzo Mech. Contractors, Inc., 2007 WL 4710949, at *2; Giannamore, 2007 WL 4107709, at *2.

In the present case, plaintiffs attempt to have their cake and eat it too.  Plaintiffs allege breach of contract based upon the Booking Contracts and then, in a blatant inconsistency, allege that the Booking Contracts are "a sham and void" for purposes of their unjust enrichment claims.[7]  See Complaint at ¶¶ 15-21.  Plaintiffs cannot argue that the Bookings Contracts are a sham and void on the one hand and that the very same Booking Contracts provide them with a right to relief based upon enforcement of those Booking Contracts.  This is simply impermissible under Connecticut law.  See OBG Tech. Servs., 503 F. Supp. 2d at 513; Meaney, 735 A.2d at 822-25.

In any event, plaintiffs' unjust enrichment claims fail because the Booking Contracts expressly govern the entirety of the relationships between WWE and plaintiffs, including all issues relating to compensation, payment of taxes (including withholding), and retirement, worker's compensation, health and similar benefits.  The allegations supporting plaintiffs' breach of contract claims acknowledge (as they must) that the Booking Contracts so governed plaintiffs' relationships with WWE.  Furthermore, the services of plaintiffs (and the alleged benefits accruing to WWE therefrom) were performed–and were required to be performed–under and pursuant to the express provisions of the Booking Contracts.  Plaintiffs, moreover, were compensated for their services in accord with the express terms and conditions of the Booking Contracts, and there is no contention to the contrary.  Thus, plaintiffs cannot, as a matter of law, seek to recover what they now term "proper compensation" in derogation of the express terms of the Booking Contracts by claiming unjust enrichment.  See OBG Tech. Servs., 503 F. Supp. 2d

---

[7] Merely labeling a contract that has been fully performed as a "sham and void" is exactly the kind of pleading rhetoric that is given no value on a motion to dismiss.  The sanctity of contracts does not yield due to rhetoric but only in very  narrow situations involving specific legal doctrines.  Obviously, plaintiffs have not shouldered the heavy burden of pleading or even attempting to plead any recognized doctrine of contract law which would render fully performed contracts "void" after one party accepts all benefits due them under the contract.

at 513; <u>Meaney</u>, 735 A.2d at 822-25.  Accordingly, the Court should dismiss plaintiffs' unjust

enrichment claims for failure to state a cause of action upon which relief can be granted.

**C.**   **Plaintiffs' Breach of Contract And Unjust Enrichment Claims Are Barred by the Applicable Statutes of Limitation**

Even if plaintiffs had stated claims upon which relief could be granted, which they have

not done, those claims would be time-barred under the applicable Connecticut State statutes of

limitation.  That fact is evident from the face of the Complaint because the plain language of the

Booking Contracts, which are expressly referenced in the Complaint (<u>see</u> Section II.B, <u>supra</u>),

make it clear that the plaintiffs have failed to bring their claims within the applicable statute of

limitations.[8]

Under Connecticut law, the applicable statute of limitations for breach of contract claims

is six (6) years.  Conn. Gen. Stat. § 52-576 ("[n]o action for an account, or on any simple or

implied contract, or on any contract in writing, shall be brought but within six years after the

right of action accrues").  Similarly, although the statute of limitations for an unjust enrichment

claim is not expressly set out by statute, a cause of action for unjust enrichment is generally

viewed as sounding in quasi-contract, and the statute of limitations for unjust enrichment is

typically held to be six years.  See <u>Gianetti</u>, 2008 WL 1994895, at *8 n.4; <u>see also</u> Conn. Gen.

Stat. 52-576; <u>Alstom Power, Inc.</u>, 2006 WL 2642412, at *6 n.10 (noting that Connecticut state

courts have applied a six-year statute of limitations to unjust enrichment claims).  Indeed,

---

[8] Failure to bring a claim within the applicable statute of limitations is an affirmative defense.  <u>United States v. Spero</u>, 331 F.3d 57, 60 n.2 (2d Cir. 2003).  However, "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."  <u>McKenna v. Wright</u>, 386 F.3d 432, 436 (2d Cir. 2004) (internal quotation marks and citation omitted); <u>United States v. Space Hunters, Inc.</u>, 429 F.3d 416, 426 (2d Cir. 2005); <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 74 (2d Cir. 1998); <u>Roberts v. Babkiewicz</u>, 563 F. Supp. 2d 358, 360 (D. Conn. 2008) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss . . . [which] is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.") (internal quotation marks and citation omitted); <u>Chisholm v. United of Omaha Life Ins. Co.</u>, 514 F. Supp. 2d 318, 324 (D. Conn. 2007) (same).

plaintiffs' Complaint appears to concede that the limitations period is six years, since it seeks certifications of a class of persons who were signatories to a booking contract in effect at any time within six years of the date suit was filed.  See Complaint at ¶ 8.

Under Connecticut law, it is well-settled that a breach of contract action accrues at the time that the breach occurs and injury is sustained, and "ignorance of the fact that damage has been done does not prevent the running of the statute . . . ."  Tolbert v. Conn. Gen. Life Ins. Co., 778 A.2d 1, 12-13 (Conn. 2001) (finding breach of contract claim to have accrued – i.e., injury inflicted – at the signing of mortgage disability policy contract at issue, which contract was alleged to have been inadequate at the time of signing); Amoco Oil Co. v. Liberty Auto & Elec. Co., 810 A.2d 259, 266 (Conn. 2002) ("The true test is to establish the time when the plaintiff first could have successfully maintained an action.") (internal quotation marks and citation omitted).  The same is true for an unjust enrichment claim that is premised upon the same alleged injury giving rise to the breach of a contract claim.

In this case, plaintiffs allege that their injuries were caused because they were classified and treated as independent contractors rather than as employees, i.e., the injury complained of is the alleged misclassification of them in the Booking Contracts.  This injury first occurred, at the very latest, at the moment plaintiffs executed their individual Booking Contracts.  The Booking Contracts expressly and unequivocally provided that the plaintiffs were independent contractors, would be treated as such, that WWE would issue Forms 1099 for tax reporting purposes, and that plaintiffs were responsible for payment of their own taxes and for obtaining their own benefits. Accordingly, plaintiffs' claims necessarily accrued and the statutes of limitations began to run upon the execution of plaintiffs' Booking Contracts.  See Brennan v. Metro. Life Ins. Co., 275 F. Supp. 2d 406, 409 (S.D.N.Y. 2003) (ERISA cause of action accrued at execution of independent

contractor agreement containing clear repudiation of eligibility for employee benefits); <u>see also</u>
<u>Downes v. J.P. Morgan Chase & Co.</u>, No. 03 Civ. 8991, 2004 WL 1277991, at *3-4 (S.D.N.Y.
June 8, 2004).  Plaintiffs' respective Booking Contracts were effective August 27, 2000 (Levy
Booking Contract), August 3, 2001 (Sanders Booking Contract), and March 25, 2002 (Klucsarits
Booking Contract).  <u>See</u> Levy Booking Contract; Klucsarits Booking Contract; Sanders Booking
Contract (attached as Exhibits A-C hereto).  As such, each of the plaintiffs entered into his
Booking Contract more than six years before the filing of the Complaint on July 16, 2008.
Plaintiffs, therefore, have failed to bring their claims within the applicable six year statute of
limitations, and the Court should accordingly dismiss plaintiffs' claims with prejudice.

> **D.     To The Extent That Plaintiffs' Claims Include State Law Components Or
> Are Considered To Be State Law Claims, They Must Be Dismissed By
> Application Of Federal Law**

> **1.     Plaintiffs' state law claims constitute impermissible indirect attempts
> to plead a private right of action under the federal and state tax laws**

There are additional reasons why plaintiffs' claims fail as a matter of law.  The federal
and state employment tax laws do not afford a right of private action.  The law in the Second
Circuit is clear that "a federal court should not strain to find in a contract a state-law right of
action for violation of a federal law under which no private right of action exists."  <u>Broder</u>, 418
F.3d at 198; <u>Grochowski v. Phoenix Constr.</u>, 318 F.3d 80, 86 (2d Cir. 2003).  Accordingly, the
Court must dismiss state-law pled claims that are, in effect, nothing more than "an impermissible
'end run'" around federal law.  <u>Grochowski</u>, 318 F.3d at 86; <u>see also</u> <u>Broder</u>, 418 F.3d at 198.
To allow such claims to proceed "would be 'inconsistent with the underlying purpose of the
[federal] legislative scheme and would interfere with the implementation of that scheme to the
same extent as would a cause of action directly under the statute.'"  <u>Grochowski</u>, 318 F.3d at 86
(quoting <u>Davis v. United Air Lines, Inc.</u>, 575 F. Supp. 677, 680 (E.D.N.Y. 1983) (dismissing

- 17 -

common law contract claim as an end-run around Vocational Rehabilitation Act's lack of private

right of action)).  In short, when a plaintiff does not possess a private right of action under a

particular statute, a state law claim premised on the requirements of such a statute "is properly

dismissed as an effort to circumvent the legislative preclusion of private lawsuits for violation of

the statute."  Broder, 418 F.3d at 203 (internal quotation marks and citation omitted).

       As with the federal tax laws, plaintiffs have no private right of action under the

Connecticut state tax withholding laws.  Connecticut law, like federal law, requires that an

employer deduct and withhold taxes from wages paid to its employees.  See Conn. Gen. Stat. §

12-705.  Nothing in the relevant Connecticut statute provides for an express cause of action by

an employee or independent contractor against his or her employer for failure to make

withholdings or for any claims related to the payment of taxes.  See id.; see also Conn. Gen. Stat.

§ 12-707 ("No employee or other person shall have any right of action against the employer in

respect to any moneys deducted and withheld from wages and paid over to the commissioner in

compliance or in intended compliance with this chapter.").

       Nor does Connecticut law provide for an implied private right of action under the state

employment tax withholding provisions.  In determining whether a state statute provides for an

implied private right of action, the Supreme Court of Connecticut has adopted the analysis set

forth by the United States Supreme Court in Cort v. Ash, 422 U.S. 66, 78 (1975), and its

progeny.  See Provencher v. Town of Enfield, 936 A.2d 625, 630 n.6 (Conn. 2007); Rollins v.

People's Bank Corp., 925 A.2d 315, 319 (Conn. 2007); Asylum Hill Problem Solving

Revitalization Ass'n v. King, 890 A.2d 522, 527 n.10 (Conn. 2006).  Under this stringent

analysis, a federal statute will "not give rise to an enforceable right unless the statute's text

contain[s] explicit rights creating language and its structure manifest[s] an intention to create a

private remedy as well as a private right." <u>Provencher</u>, 936 A.2d at 630 n.6 (citing <u>Gonzaga</u>

<u>Univ. v. Doe</u>, 536 U.S. 273, 283-84 (2002)); <u>Asylum Hill</u>, 890 A.2d at 527-28 (noting "the

presumption in Connecticut that private enforcement does not exist unless expressly provided in

a statute"); <u>see also</u> <u>Alexander v. Sandoval</u>, 532 U.S. 275, 286-87 (2001) (a statute must display

"an intent to create not just a private right but also a private remedy" without which "a cause of

action does not exist and courts may not create one, no matter how desirable that might be as a

policy matter, or how compatible with the statute"). Accordingly, the Connecticut Supreme

Court has noted that "it is a rare occasion that we will be persuaded that the legislature intended

to create something as significant as a private right of action but chose not to express such an

intent in the statute." <u>Provencher</u>, 936 A.2d at 630. In this case, nothing in the language of the

Connecticut employment tax provisions governing withholding even suggests that the legislature

intended to extend an implied private right of action and a private remedy to individuals, like

plaintiffs, who complain about their employer's compliance with the statute. Plaintiffs,

therefore, have no private right of action to enforce the provisions of Connecticut State tax law

against WWE.

   The Second Circuit's opinion in <u>Broder</u> is directly on point. In <u>Broder</u>, the plaintiff

brought breach of contract, unjust enrichment, and a variety of other common law claims against

cable services providers, for an alleged violation of the uniform rate requirements of the

Communications Act of 1934 (the "Act"). <u>See</u> <u>id.</u> at 191. Specifically, the plaintiff alleged that

defendants violated the Act by extending "winter season" cable rates to some residents, but

failing to advise the plaintiff that the same rates were available to him. <u>See</u> <u>id.</u> at 192. The

plaintiff further alleged that defendants' violation of the Act (and similar state statutes) breached

his contract with defendants to the extent the contract provided that "all of [defendants'] rates

and any changes in those rates will be subject to applicable law." Id. The plaintiff also alleged that defendants were unjustly enriched to the extent they collected higher rates and fees from the plaintiff than they otherwise would have collected. Id. The Second Circuit affirmed the dismissal of the plaintiff's breach of contract and unjust enrichment claims, finding that the plaintiff could not avoid the lack of a private right of action under the Act by disguising his federal claims as state law breach of contract and unjust enrichment claims. See id. at 198, 202. The principle espoused in Broder controls the result in the present case.

Plaintiffs' claims in this case–both their breach of contract and unjust enrichment claims–are predicated on WWE's alleged failure to "make the withholding required by law." Complaint at ¶ 16.[9] As such, plaintiffs' claims are causes of action brought under the federal and/or state employment tax laws, which were mischaracterized by plaintiffs as state common law claims. There is no question that the claims arise under, and are entirely dependent upon, the application and analysis of federal and/or state tax law.

Private plaintiffs (including performers alleging misclassification) do not have a private right to enforce the provisions of the federal employment tax laws, which include: (1) federal income tax withholding under 26 U.S.C. § 3402;[10] (2) FICA taxes under 26 U.S.C. §§ 3101, 3102;[11] and (3) FUTA taxes under 26 U.S.C. § 3301. See Seabury v. City of New York, No. 06-CV-1477, 2006 WL 1367396, at *5 (E.D.N.Y. May 18, 2006) ("Private citizens cannot enforce

---

[9] Count I is squarely premised on this allegation. Count II incorporates all the preceding allegations, which include the tax withholding allegations, and as such is based on the same concept.

[10] Under Section 3403, an employer is liable for withholding specific amounts of money from its employees' wages to pay that employee's federal income taxes. See 26 U.S.C. § 3403. This section expressly provides, however, that the employer "shall not be liable to any person for the amount of any such payment." Id.

[11] Under Section 3102(b), an employer is liable to withhold and pay the taxes of its employees required under FICA. See 26 U.S.C. § 3102(b). This section expressly provides, however, that the employer "shall be indemnified against the claims and demands of any person for the amount of any such payment made by such employer." Id.

provisions of the Tax Code.  That is the duty of the Secretary of the Treasury and the

Commissioner of the Internal Revenue Service, who are charged with the responsibility of

administering and enforcing the Tax Code . . . .  Federal courts have consistently refused to

imply a private cause of action under the tax laws, including actions of employees against

employers who have violated the requirements of the Tax Code."); Baraschi v. Silverwear, Inc.,

No. 01 Civ. 11263 (MBM), 2002 WL 31867730, at *6 (S.D.N.Y. Dec. 23, 2002) ("if [plaintiff] is

actually attempting to assert a claim based on the Internal Revenue Code, her claim is barred on

the ground that the Internal Revenue Code provides no private right of action against

employers"); White v. White Rose Food, 62 F. Supp. 2d 878, 886-87 (E.D.N.Y. 1999) (finding

that a private cause of action cannot exist under certain federal and state tax provisions, including

FUTA and FICA); Spilky v. Helphand, No. 91 CIV. 3045, 1993 WL 159944, at *4 (S.D.N.Y.

May 11, 1993) (same); DiGiovanni v. City of Rochester, 680 F. Supp. 80, 82-83 (W.D.N.Y.

1988) (same); see also McDonald v. Southern Farm Bureau Life Ins. Co., 291 F.3d 718, 726

(11th Cir. 2002) (finding, after detailed analysis, no private right of action under FICA based

upon allegations employee/independent contractor misclassification).

　　　　Accordingly, as in Broder, plaintiffs' "state law claims" constitute nothing more than an

attempt to end-run the tax laws and the legislative schemes embodied therein.  Such pleading is

impermissible and, thus, the Court should dismiss plaintiffs' claims because they are premised

entirely on the interpretation, application, and analysis of federal and/or state tax law, neither of

which provides a private right of action.[12]  See Broder, 418 F.3d at 198, 202; Grochowski, 318

F.3d at 86; Davis, 575 F. Supp. at 680.

---

[12]  Moreover, even if such a private right of action did exist, which it does not, such a claim here would be entirely
circular given the express provisions of the Booking Contracts.  To the extent these plaintiffs were allowed to assert
such a private right of action for the monies they appear to claim WWE should have withheld despite the contract

2.    **To the extent plaintiffs' claims relate to the rights, incidents and benefits of employment, plaintiffs' state law claims are pre-empted by ERISA**

The plaintiffs' vague and unclear references to "the rights, incidents and benefits of employment" (Complaint at ¶¶ 17, 20, 21) implicate and raise substantial issues as to plaintiffs' and the putative class members' classification and rights, if any, under ERISA. To the extent plaintiffs' claims implicate ERISA, the claims require an analysis and interpretation of plaintiffs' status as determined by ERISA. As such, their claims are pre-empted by ERISA and thus should be dismissed.

ERISA is a federal statute that governs most voluntarily established pension, benefits, and health plans established by private employers for the benefit of their employees.[13] ERISA was enacted specifically "'to address concerns that lack of uniformity and the administrative and financial burdens of compliance with conflicting state laws might work to the detriment of plan beneficiaries, and reduce the willingness of employers to adopt such plans, or lead to a reduction in the level of benefits furnished.'" Gianetti, 2008 WL 1994895, at *3 (quoting Plumbing Indus. Bd. v. Howell Co., 126 F.3d 61, 66 (2d Cir. 1997)). To ensure uniformity, ERISA contains an express pre-emption clause that provides, with limited exceptions, that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a); Gianetti, 2008 WL 1994895, at *3. ERISA's "expansive" pre-emption provision is intended "to ensure that employee benefit plan regulation would be exclusively a federal concern." Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004)

---

provision obligating WWE to pay without withholding monies for tax purposes, WWE would simply counterclaim for all such amounts based on the plaintiffs' express promises to pay such amounts directly to taxing authorities.

[13] Congress enacted ERISA to "'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)).

(internal quotation omitted).  Thus, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  Id. at 209; see also Curcio v. Hartford Fin. Servs. Group, 469 F. Supp. 2d 18, 22 (D. Conn. 2007).

To determine whether state law claims are pre-empted by ERISA, the Court must determine that: (1) plaintiffs could have brought their claims under ERISA's § 502(a)(1)(B) (see 29 U.S.C. § 1132(a)(1)(B)) at some point in time; and (2) plaintiffs' claims do not implicate any independent legal duty on the part of WWE.  See Gianetti, 2008 WL 1994895, at *3; see also Davila, 542 U.S. at 210.  To defeat pre-emption, the state law claims must be "entirely independent" of the federally regulated ERISA plan or plans implicated by a plaintiff's claims.  See Gianetti, 2008 WL 1994895, at *3.

Under Section 502(a)(1)(B) of ERISA, a participant or beneficiary of an ERISA governed plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  The United States Supreme Court has noted that "[t]his provision is relatively straightforward" – "[i]f a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits" or he "can also bring suit generically to 'enforce his rights' under the plan."  Davila, 542 U.S. at 210.  Under ERISA, a "participant" is defined as "any employee or former employee of an employer, . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . or whose beneficiaries may be eligible to receive any such benefit.  29 U.S.C. § 1002(7).  ERISA defines the term "beneficiary" to mean "a person designated by a participant, or by the

terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  Id. §
1002(8).

   Further, "if the alleged liability is derived from or dependent upon the existence and
administration of an ERISA-regulated benefit plan, then the state-law claims are not entirely
independent of the federally regulated contract itself, and are therefore preempted."  Gianetti,
2008 WL 1994, 895 at *3 (internal quotation marks and citation omitted).  Indeed, state law
claims "are not independent of the ERISA plan if the interpretation of the terms of the benefits
forms an essential part of the plaintiff's claims and the defendant's alleged liability."  Id.
(internal quotation marks and citation omitted); see also Davila, 542 U.S. at 213 (state law claims
pre-empted where "[p]etitioners' potential liability . . . derives entirely from the particular rights
and obligations established by the benefit plans").

   In the present case, plaintiffs' vague claims implicate ERISA to the extent that the
Complaint broadly references plaintiffs' alleged entitlement to the "rights, incidents and
benefits" of employee status.  See Complaint at ¶¶ 17, 20, 21.  These expansive claims
necessarily relate to any and all ERISA governed benefits plans offered by WWE to its
employees.  Further, by seeking a determination of their employment status and compensatory
damages for denial of "the rights, incidents and benefits" of employment, the named plaintiffs
are clearly seeking both to recover "benefits due to [them] under the terms of [any applicable]
plan" and "to clarify [their] rights to future benefits under the terms of [any such] plan."  See 29
U.S.C. § 1132(a)(1)(B).  Plaintiffs, moreover, satisfy the definition of "participant" applicable to
Section 502 of ERISA, as they have brought the present action as "employees" allegedly eligible
(and eligible in the past) for benefits under WWE's ERISA governed plans.  While WWE
disputes that plaintiffs were employees of WWE, it cannot be disputed that plaintiffs now seek to

enforce and/or clarify their rights to benefits available to employees of WWE, which they claim they were improperly denied at all times during their relationships with WWE.   Plaintiffs, therefore, satisfy the definition of "participant" applicable to ERISA's civil enforcement provisions.   Plaintiffs' claims, accordingly, could have been brought under Section 502(a)(1)(B) of ERISA.   See Davila, 542 U.S. at 211; Curcio, 469 F. Supp. 2d at 23.

In addition, plaintiffs' claims to the rights, incidents and benefits bestowed upon WWE employees are inherently dependent upon the existence and administration of ERISA-governed benefits plans.   See Gianetti, 2008 WL 1994895, at *4.   Plaintiffs have alleged that WWE breached the Booking Contracts and was unjustly enriched by receiving the value of the named plaintiffs' services and failing to provide all of the rights, incidents and benefits to compensate for those services.   See Complaint at ¶¶ 15-21.   It is beyond dispute that plaintiffs' entitlement to the recovery of benefits under any ERISA plan "requires an initial determination of the nature and extent of [the] benefits provided under the plan" and the interpretation of the terms of the plan to determine if plaintiffs would be entitled to any such benefits (regardless of whether or not classified as an "employee").   See Gianetti, 2008 WL 1994895, at *4; see also Wolf v. Coca-Cola Co., 200 F.3d 1337, 1340 (11th Cir. 2000).   In other words:

> [I]nterpretation of the terms of [WWE's] benefit plans forms an essential part of [plaintiffs' state law claims], and . . . liability would exist here only because of [WWE's] administration of ERISA-regulated benefit plans.   [WWE's] potential liability under [state law] in [this case], then, derives entirely from the particular rights and obligations established by the benefit plans.

Davila, 542 U.S. at 213; see also Gianetti, 2008 WL 1994895, at *4.

Thus, plaintiffs' claims are "'not entirely independent of the federally regulated contract itself' and do not otherwise implicate any entirely independent legal duties of WWE.   See Gianetti, 2008 WL 1994895, at *4 (quoting Curcio, 469 F. Supp. 2d at 23).   Instead, plaintiffs'

claims seek recovery of the value of the rights and benefits allegedly due to them under any applicable ERISA governed plans.  See id.; Curcio, 469 F. Supp. 2d at 23 (quantum meruit claim pre-empted where "claim for damages is grounded in the existence of the ERISA-regulated plan providing for severance benefits in certain circumstances").  The calculation of this value necessitates further reference to the terms and provisions of any such plans.  See Curcio, 469 F. Supp. 2d at 23; Callahan v. Unisource Worldwide, Inc., No. CIVA 3:01CV1205 (CFD), 2003 WL 1714369, at *7 (D. Conn. Mar. 27, 2003) (finding breach of contract claim pre-empted where claim concerned plaintiff's receipt of benefits under ERISA plan and required reference to the plan to calculate the available benefits).  Accordingly, plaintiffs' claims necessarily depend upon the existence of an ERISA plan and the terms of any such plan, and thus, are completely pre-empted.  See Gianetti, 2008 WL 1994895, at *4; Curcio, 469 F. Supp. 2d at 23-24; Callahan, 2003 WL 1714369, at *6; see also Davila, 542 U.S. at 213-14 (state law claims pre-empted by suit brought only to rectify an alleged wrongful denial of benefits promised under ERISA regulated plans).  The Court, therefore, should dismiss plaintiffs' breach of contract and unjust enrichment claims as pre-empted and, thus, for failing to state a cause of action upon which relief can be granted.

**E.**     **To the Extent Plaintiffs Seek to Amend the Complaint to Allege Direct Claims Under ERISA, Plaintiffs' Claims Must Be Dismissed**

As argued above, plaintiffs' state law claims, to the extent they allege entitlement to the "rights, incidents and benefits" of employment, are pre-empted by ERISA and the Court should therefore dismiss those claims.  Even if plaintiffs attempted to amend their claims to assert direct ERISA claims (or if the Court construes plaintiffs' Complaint to raise such claims), plaintiffs' claims nevertheless fail for several reasons.  First, any potential ERISA claims that plaintiffs may assert based upon the alleged mischaracterization of their employment status are barred by the

applicable statute of limitations and thus fail as a matter of law.  Amendment would, therefore,

be futile.  Second, plaintiffs have failed to allege facts to support that they have exhausted, or

taken any steps to exhaust, their administrative remedies prior to filing suit—a strict prerequisite

to filing a claim under ERISA.  Third, plaintiffs have similarly failed to plead any allegations to

support their standing as participants or beneficiaries under WWE's ERISA-governed benefits

plans.  For all of these additional reasons, the Court should dismiss plaintiffs' claims.

### 1.   Plaintiffs' claims are barred by the applicable statute of limitations

As discussed previously, the plaintiffs' vague claims of entitlement to "the rights,

incidents and benefits" of employment are pre-empted by ERISA.  Although the Complaint does

not mention ERISA in an apparent attempt to circumvent preemption, it is beyond a shadow of

doubt that any action by an employee or alleged employee which mentions "benefits" due him is

subject to the supremacy of ERISA.  See Section D.2, supra.  The sole statutory basis under

ERISA for a civil action by a participant or beneficiary is found in Section 502(a)(1)(B), which

authorizes an individual to bring an action to "recover benefits due him under the terms of his

plan."  See 29 U.S.C. § 1132(a)(1)(B).  No other compensatory damages are available under

Section 502(a)(1)(B).

It is well-established that all claims related to an alleged denial of benefits brought under

Section 502(a)(1)(B) of ERISA are subject to a six-year statute of limitations.[14]  See Gianetti,

2008 WL 1994895, at *9 n.5; see also Carey v. IBEW Local 363 Pension Plan, 201 F.3d 44, 49

(2d Cir. 1999).  A cause of action under Section 502(a)(1)(B) of ERISA accrues "upon a clear

---

[14] Section 502(a)(1)(B) does not contain an express statute of limitations.  See Gianetti, 2008 WL 1994895, at *9
n.5; see also Carey, 201 F.3d at 49.  Courts, therefore, borrow the most analogous statute of limitations from state
law – generally the limitations period applicable to claims for breach of contract.  See Gianetti, 2008 WL 1994895,
at *9 n.5; see also Carey, 201 F.3d at 49.  Under Connecticut State law, the statute of limitations for breach of
contract claims is six years.  See Conn. Gen. Stat. § 52-576(a); see also Gianetti, 2008 WL 1994895, at *9 n.5.

repudiation by the plan that is known, or should be known, to the plaintiff regardless of whether the plaintiff has filed a formal application for benefits." Carey, 201 F.3d at 49; Brennan v. Metro. Life Ins. Co., 275 F. Supp. 2d 406, 409 (S.D.N.Y. 2003).

The Second Circuit has yet to determine whether the signing of an agreement under which a plaintiff voluntarily agrees that he is an independent contractor, and is thus not entitled to benefits typically provided to common-law employees, qualifies as repudiation sufficient to trigger the statute of limitations. See Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 134-35 (2d Cir. 2001); Brennan, 275 F. Supp. 2d at 409. Nevertheless,

> [a]ll of the district courts that have considered claims made by individuals who were classified or treated as independent contractors have held that the statute of limitations begins to run when the beneficiary first learns that she is considered an independent contractor and is therefore not entitled to benefits, regardless of whether she later files a formal claim for benefits.

Brennan, 275 F. Supp. 2d at 409-10 (ERISA cause of action accrued on the date plaintiffs executed independent contractor agreements); see also Downes, 2004 WL 1277991, at *3-4; Ambris v. Bank of N.Y., No. 96 Civ. 0061, 1998 WL 702289, at *4 (S.D.N.Y. Oct. 7, 1998). These cases are completely consistent with longstanding Second Circuit jurisprudence holding that an ERISA action accrues, and the limitation period begins to run, when there has been a repudiation which is clear and made known to the alleged claimant. Miles v. New York State Teamsters Conference Pension & Ret. Fund, 698 F.2d 593, 598 (2d Cir. 1983) (citations omitted).

In this case, the plaintiffs' Booking Contracts expressly and clearly provided that the plaintiffs were independent contractors and that they were responsible for their own benefits. Therefore, the plaintiffs knew on the dates they executed the Booking Contracts that they were not entitled to the various benefits provided by WWE to certain employees. The Booking Contracts contain a clear and unequivocal repudiation of employee benefits and therefore

constitute sufficient "repudiations" to trigger the running of the statute of limitation.  See

Brennan, 275 F. Supp. 2d at 409-10.  The Levy Booking Contract was effective August 27, 2000

(nearly 8 years before filing of Complaint), the Klucsarits Booking Contract was effective March

25, 2002 (over 6 years before filing of Complaint) and the Sanders Booking Contract was

effective August 3, 2001 (nearly 7 years before filing of Complaint).  Accordingly, each of the

plaintiffs failed to bring his claims within the applicable six-year statute of limitations.

 Moreover, it is clear the plaintiffs cannot cure this defect by amendment.  Under Rule

15(a) of the Federal Rules of Civil Procedure, the Court has broad discretion to deny plaintiffs

leave to amend their complaint.  See Sorri v. Bell Atlantic, 45 F. App'x 80, 82 (2d Cir. 2002);

Gianetti, 2008 WL 1994895, at *9.  The Court should deny leave to amend where the plaintiff's

proposed amendment is futile.  See Gianetti, 2008 WL 1994895, at *9; Male v. Tops Friendly

Markets, No. 07-CV-6573, 2008 WL 1836948, at *5 (W.D.N.Y. Apr. 22, 2008).  It is well

established that an amendment is futile where the proposed claims are time-barred by the

applicable statutes of limitation.  See Gianetti, 2008 WL 1994895, at *9 (refusing to grant leave

to amend to add direct ERISA claims, or to consider state law claims as pleading ERISA claims,

as any such claims were time-barred on the face of the complaint); Book v. Lupinacci, No.

3:04CV1661 (PCD), 2006 WL 1182275, at *6 (D. Conn. Apr. 28, 2006) (finding amendment to

complaint futile where all of the proposed amendments related to charges barred by applicable

statutes of limitations); see also Sorri, 45 F. App'x at 82; McKenzie v. Dow Jones & Co., No. 08

Civ. 3623 (SAS), 2008 WL 2856337, at *5 (S.D.N.Y. July 22, 2008) (leave to re-plead denied on

the ground that claim was "barred by the statute of limitation no matter how the claim is

pleaded"); Male, 2008 WL 1836948, at *5; Bloom v. United States Gov't, No.

02Civ.2352DABDF, 2003 WL 22327163, at *8 (S.D.N.Y. Oct. 10, 2003) ("Leave to amend

would be futile and thus is also unwarranted when the claims to be amended are barred by the statute of limitations.").

Plaintiffs cannot now amend their complaint to add ERISA claims (or argue that their state law claims should be construed as direct ERISA claims) because all such ERISA claims are time-barred.  Amendment, therefore, is entirely futile.  Accordingly, the Court should dismiss plaintiffs' claims with prejudice and should not grant plaintiffs' leave to re-plead or to amend their complaint to add claims under ERISA.  See Gianetti, 2008 WL 1994895, at *9.

**2.    Plaintiffs have failed to plead facts sufficient to satisfy ERISA's strict exhaustion requirement**

The plaintiffs' claims of entitlement to the rights, incidents and benefits of employment are subject to dismissal for the additional reason that plaintiffs failed to plead any facts or make any allegations whatsoever that even suggest they have exhausted their administrative remedies under WWE's benefits plans—a strict prerequisite to filing a claim under ERISA.  There is a "'firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'"  Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993) (quoting Alfarone v. Bernie Wolff Constr. Corp., 788 F.2d 76, 79 (2d Cir. 1986)).  The exhaustion requirement functions to:

> "(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo."

Id. (quoting Denton v. First Nat'l Bank, 765 F.2d 1295, 1300 (5th Cir. 1985)).  Thus, a plaintiff is required to exhaust the administrative appeals procedures provided for in the relevant benefit plans or policies.  See Id.  Ignorance of the appropriate administrative claims and/or appeal

procedures does not excuse an ERISA plaintiff's failure to exhaust his or her administrative remedies.  See Davenport, 249 F.3d at 134.

In this case, plaintiffs are wholly unable to satisfy this requirement.  Plaintiffs' Complaint does not allege, nor does it even suggest, that any of the plaintiffs filed a formal claim or appeal for benefits under any of WWE's ERISA governed benefits plans.  The Court should, therefore, dismiss plaintiffs' claims for failure to adequately plead exhaustion of administrative remedies.  See Potter v. ICI Americas, Inc., 103 F. Supp. 2d 1062, 1066-67 (S.D. Ind. 1999) ("Potter makes no allegations that he made any claim for benefits.  Instead, he simply states that [his employer] wrongfully classified him as an independent contractor . . . . Thus, on the face of Potter's complaint, we must conclude that he has insufficiently alleged exhaustion of administrative remedies."); See also Davenport, 249 F.3d at 134-35 (dismissing independent contractor's claim alleging  misclassification and entitlement to benefits for failure to exhaust because she never attempted to file a formal claim or request a summary plan description); Yak v. Bank Brussels Lambert, No. 99 CIV 12090, 2002 WL 31132963, at *4-5 (S.D.N.Y. Sept. 26, 2002) (dismissing independent contractor's claims for benefits for failure to exhaust where plaintiff did not make a written claim under any of the relevant plans, failed to allow any of the relevant plan administrators to render a decision and failed to appeal any resulting adverse decision).

3. **Plaintiffs have failed to plead sufficient allegations to support standing to pursue their claims**

The plaintiffs' claims for benefits must also be dismissed because the plaintiffs have not pled any facts or made any allegations to support their standing to assert claims for relief under any of WWE's ERISA-governed plans.  Plaintiffs' Complaint does not specify which, if any, of WWE's plans provide the benefits they seek.  For these reasons alone, the Court should dismiss

plaintiffs' claims.  Plaintiffs' broad and ambiguous pleadings simply do not support plaintiffs'

required standing to raise ERISA claims.[15]

As discussed above, any civil action by an individual seeking employee benefits must be

brought under Section 502(a)(1)(B) of ERISA.  Section 502 has been construed narrowly and

grants standing to sue for alleged benefits only to "participants and beneficiaries."  Franchise

Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 5, 27 (1983); Chemung Canal Trust Co.

v. Sovran Bank/Maryland, 939 F.2d 12, 14 (2d Cir. 1991) ("[I]n the absence of some indication

of legislative intent to grant additional parties standing to sue, the list in § 502 should be viewed

as exclusive").  Section 1002(7) of ERISA defines a "participant" as "any employee or former

employee of an employer . . . who is or may become eligible to receive a benefit of any type

from an employee benefit plan."  29 U.S.C. § 1002(7).  To establish that one "may become

eligible for benefits," a claimant must show that he has "a colorable claim that (1) he or she will

prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future."

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117-18 (1989) (internal quotation marks

and citation omitted); see also Saladino v. I.LG.W.U. Nat'l Ret. Fund, 754 F.2d 473, 476 (2d Cir.

1985) ("A former employee who has neither a reasonable expectation of returning to covered

employment nor a colorable claim to vested benefits, however, simply does not fit within the

[phrase] 'may become eligible'").

In this case, plaintiffs have not alleged facts to support, nor have they pled any facts to

even suggest, that they were or are eligible participants or beneficiaries under any WWE plans.

---

[15] As set forth herein, plaintiffs' claims suffer from numerous fatal and incurable defects.  In light of those defects, there does not appear to be any purpose served by requesting a more specific pleading to further flush out plaintiffs' lack of standing.  Doing so here serves no purpose if the Court agrees with WWE's arguments for outright dismissal. Should the Court not agree with WWE's arguments for dismissal, WWE respectfully requests a more specific pleading setting forth the precise benefits being sought by plaintiffs and the factual basis for the requisite standing to seek such benefits.

Accordingly, the Court should dismiss plaintiffs' claims for failure to adequately plead standing under ERISA.

> **F.      Where the Named Plaintiffs Cannot State Individual Causes of Action, Plaintiffs' Class Claims Cannot Stand As a Matter of Law**

In the absence of viable individual claims, plaintiffs' class claims cannot stand.  It is well-established that the named plaintiff must have standing to bring an individual claim and must adequately plead an individual claim in order to pursue putative class claims on behalf of and as a representative of a proposed class of plaintiffs.  See Blum v. Yaretsky, 457 U.S. 991, 1002 n.13 (1982) (named plaintiffs must "demonstrate the requisite case or controversy between themselves personally and [defendants]," in order to "seek relief on behalf of himself or any other member of the class" (internal quotation marks and citation omitted)); Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976); O'Shea v. Littleton, 414 U.S. 488, 494 (1974); Messier v. Southbury Training School, No. 3:94-CV-1706(EBB), 1999 WL 20910, at *22 (D. Conn. Jan. 5, 1999) ("Standing cannot be acquired through the back door of a class action.").  Because they cannot adequately state individual claims for relief premised upon their allegations of breach of contract and unjust enrichment due to multiple independent reasons requiring dismissal, plaintiffs lack standing to pursue their putative class claims against WWE. See Blum, 457 U.S. at 1002 n.13; O'Shea, 414 U.S. at 494; Messier, 1999 WL 20910, at *22. Therefore, plaintiffs' putative class claims should be dismissed.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, defendant World Wrestling Entertainment, Inc. respectfully

requests that the Court dismiss with prejudice plaintiffs' individual claims and putative class

claims.


Respectfully submitted,

WORLD WRESTLING ENTERTAINMENT, INC.


  /s/ Douglas W. Bartinik_____
Jerry S. McDevitt (ct11783)
jerry.mcdevitt@klgates.com
Richard W. Hosking (ct18265)
richard.hosking@klgates.com
K&L GATES LLP
535 Smithfield Street
Pittsburgh, PA 15222
(412) 355-6500 (telephone)
(412) 355-6501 (facsimile)


Felix J. Springer (ct05070)
Stanley A. Twardy (ct05096)
Douglas W. Bartinik (ct26196)
fjspringer@daypitney.com
satwardy@daypitney.com
dwbartinik@daypitney.com
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
(860) 275-0184 (telephone)
(860) 275-0343 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

        I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 29, 2008.

 

 

                                      /s/ Douglas W. Bartinik
                                      Douglas W. Bartinik