**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SCOTT LEVY, CHRISTOPHER KLUCSARITS AND MICHAEL SANDERS, individually and on behalf of all other similarly-situated individuals, : : : : Plaintiffs, : : v. : : WORLD WRESTLING ENTERTAINMENT, INC., : : Defendant. : : : | CIVIL ACTION NO. 3:08-01289 (PCD) December 22, 2008 |

**WORLD WRESTLING ENTERTAINMENT INC.'S**
**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## I. INTRODUCTION

In their Memorandum in Opposition ("Pls.' Opp.") to Defendant World Wrestling Entertainment, Inc.'s ("WWE's") Motion to Dismiss, plaintiffs erect a series of arguments intended to mask the fatal deficiencies in their two state law claims <u>as pled</u>. Much of plaintiffs' Opposition relies upon allegations that are not in and are, in fact, directly in conflict with the actual allegations and admissions made in their Complaint. The Court should not decide the present motion based on a hypothetical pleading but instead must decide whether the claims for breach of contract and unjust enrichment, as currently pled, state plausible causes of action. <u>See</u> <u>Wright v. Ernst & Young LLP</u>, 152 F.3d 169, 178 (2d Cir. 1998) (dismissing claims as pled and noting that parties are not entitled to amend complaint through opposition to motion to dismiss); <u>Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg</u>, Civ. No. H-85-551 (MJB), 1986 WL 15663, at *10 n.7 (D. Conn. Apr. 28, 1986) (same) (copy attached at <u>Exhibit A</u>); <u>see also</u> <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101, 1107 (7th Cir. 1984) (same). Plaintiffs have entirely failed to state any claim for relief in their Complaint, and the Court should therefore dismiss it in its entirety.

The plaintiffs are also not entitled to amend their Complaint to add claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, <u>et</u> <u>seq</u>. Plaintiffs have not moved for leave to amend, the deadline to make such amendment has expired, and plaintiffs' proposed amendment is futile as their proposed ERISA claims are time barred. For the reasons set forth below and those discussed in WWE's Memorandum in Support of its Motion to Dismiss ("WWE Memo.") (Docket No. 18), this Court should dismiss plaintiffs' claims with prejudice and without leave to amend.

## II. PLAINTIFFS' REMAINING CLAIMS

In response to WWE's motion to dismiss, plaintiffs have expressly withdrawn their claims based upon the alleged failure to make federal and state tax withholdings – as they must do in light of the Second Circuit Court of Appeals' decision in <u>Broder v. Cablevision Systems Corporation</u>, 418 F.3d 187

- 1 -

(2d Cir. 2005).[1]  Pls.' Opp. at 16 n.4.  Plaintiffs have also conceded that the preemptive effect of ERISA affirmatively precludes plaintiffs' state law claims to the extent they seek any ERISA-governed benefits. See Pls' Opp. at 16-17.  Accordingly, plaintiffs' remaining claims are limited to state law breach of contract and unjust enrichment claims seeking undefined "[non-ERISA] rights, incidents and benefits" of employment in the face of written contracts which did not obligate WWE to provide any such benefits.[2]

### III. PLAINTIFFS MISCONSTRUE THE STANDARD OF REVIEW FOR A MOTION TO DISMISS

Plaintiffs dedicate several pages of their Opposition to the common law analysis delineating, generally, the legal status of an employee versus that of an independent contractor.  See Pls.' Opp. at 1-4, 5-7.  This analysis is irrelevant at this stage; a motion to dismiss focuses only on the legal viability of the claims pled in the Complaint and not the weight of the evidence which may be offered in support thereof. See Bansavitch v. McLane Co, Inc., No. 3:07cv702 (WWE), 2008 WL 4821320, at *2 (D. Conn. Oct. 31, 2008) (copy attached at Exhibit A).  The question at issue now is whether the alleged misclassification, as pled in the Complaint, supports viable claims for breach of contract and unjust enrichment under Connecticut law.  See id.; see also Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1965, 1974 (2007); OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp., 503 F. Supp. 2d 490, 502 (D. Conn. 2007).   Plaintiffs cannot simply claim a misclassification of their employment status and *ipso facto*

---

[1] In conceding their failure to plead claims based upon employment tax withholdings, plaintiffs incorrectly assert that "there is no conceivable circumstances under which such withholding would be due [and] that the contractual promise to pay any withholding 'required by law' served as a hedge . . . against the possibility that the designation of plaintiffs as 'independent contractors' would subsequently be found to be a sham." Pls.' Opp. at 16 n.4.  Such rhetoric only provides further evidence that plaintiffs did not do the proper research before suing WWE.  The contractual provision "as required by law" is included in the plaintiffs' Booking Contracts to account for certain states that require a company to withhold specified tax-related payments from certain independent contractors' wages and not as an implicit recognition of the invalidity of plaintiffs' independent contractor classifications.  See, e.g., Minn. Stat. § 290.9201.

[2] Plaintiffs' Opposition fails to shed any meaningful light on what constitutes non-ERISA rights, incidents and/or benefits of employment and, as such, continues to fail to point to any breach of a specific promise to pay such benefits. Plaintiffs should not be permitted to plead vague, ambiguous and ill-defined allegations and then use their "non-artful" pleading to defeat WWE's motion to dismiss by effectively amending their pleadings through their Opposition.  See Car Carriers, 745 F.2d at 1107 (finding it "questionable for the district court to have relied on the plaintiffs' [motion to dismiss opposition] briefs to embellish the conclusory allegations of the complaint").  Nor can plaintiffs use their vague and insufficiently pled Complaint as a means to obtain wide-ranging discovery from WWE in the hopes that they turn up some actionable wrongdoing – plaintiffs' Opposition suggests just such a fishing expedition.  See Pls.' Opp. at 18.

be entitled to relief – they must adequately fit their allegations into the elements of a recognized and valid cause of action.  Plaintiffs have failed to do so here.[3]

## IV.  ARGUMENT

### A.  Plaintiffs' State Law Claims Fail As A Matter of Law: Plaintiffs' Complaint Does Not Support A Claim For Breach Of Contract Or Unjust Enrichment In Light Of the Clear Provisions Of Plaintiffs' Booking Contracts

Recognizing (and implicitly conceding) the futility of pursuing a breach of contract claim based upon the plain language of plaintiffs' Booking Contracts[4] (Pls.' Opp. at 8, 13), plaintiffs now, in effect, attempt to contradict their Complaint by claiming that suit is based on a different and unpled "implied at law contract," which contains terms more favorable to plaintiffs.  Plaintiffs, however, cannot escape the clear provisions of the Booking Contracts or the allegations pled in their Complaint.

Plaintiffs' Complaint, however, makes no mention of any such implied contract and, instead, explicitly relies on plaintiffs' Booking Contracts throughout – most notably in connection with Count I,

---

[3]  Plaintiffs' discussion of Bass v. World Wrestling Federal Entertainment, Inc., No. 99-CV-5688 (NGG) (E.D.N.Y.), bears no relevance to the present motion.  See Pls.' Opp. at 2-3 & n.1, 10.  In Bass, WWE argued at the summary judgment stage that Ms. Bass, a former professional wrestler, was an independent contractor and thus not subject to the provisions of Title VII.  In the alternative, WWE argued that if the court found Ms. Bass to be an "employee," then she was barred from pursuing personal injury claims under the New York Workers' Compensation Law.  The court ultimately found that Ms. Bass was an employee for purposes of Title VII – a decision from which the WWE was unable to pursue an interlocutory appeal.  WWE later succeeded at trial and the issue of Ms. Bass's status as "employee" or "independent contractor" was thus never appealed.  Accordingly, the Bass case has no preclusive impact or any relevance whatsoever to this case.  See Availl, Inc. v. Ryder Sys., Inc., 110 F.3d 892, 897 (2d Cir. 1997) ("a party cannot be considered to have had a full and fair opportunity to litigate an issue, and issue preclusion cannot apply, if there is an inability to obtain [appellate] review or there has been no review, even though an appeal was taken" (internal quotations omitted)); see also Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 45 (2d Cir. 1986) (same).

[4]  Plaintiffs' Booking Contracts expressly provide that each of the plaintiffs (not WWE) was responsible for "all contributions to retirement plans and programs, or other supplemental income plan or program that would provide [him] with personal or monetary benefits upon retirement from professional wrestling," for obtaining his own worker's compensation insurance, and for electing to "obtain health, life and/or disability insurance."  See [Levy Booking Contract] Ex. A to WWE's WWE Memo., Sections 9.11-9.13; [Klucsarits Booking Contract] Ex. B to WWE Memo., Sections 9.11-9.13; [Sanders Booking Contract] Ex. C to WWE Memo., Sections 9.11-9.13.

The Booking Contracts clearly state that the plaintiffs, not WWE, were contractually obligated to procure any of the rights, incidents and benefits of employment – including all ERISA and non-ERISA benefits.  The plain, ordinary, and unambiguous terms of these provisions makes clear that WWE did not contractually agree to provide plaintiffs with "the rights, incidents and benefits of employment" under the Booking Contracts.  As plaintiffs now concede (Pls.' Opp. 8, 13), they cannot state a claim for breach of contract based on an alleged failure by WWE to provide plaintiffs with rights, incidents and benefits of employment, where no obligation to provide any such rights, incidents and benefits are found, suggested or even alleged to exist in the Booking Contracts.  See Meaney v. Connecticut Hosp. Assoc., Inc., 250 Conn. 500, 510 (1999) (noting that plaintiff could not sue to recover compensation on an express contract in the absence of a provision in the contract containing terms providing for such compensation).

alleging breach of contract, and as a necessary part of plaintiffs' proposed class definition. See Complaint at ¶¶ 3, 5, 8, 15, 16, 20. In fact, plaintiffs premise their claims on the independent contractor classification explicitly set forth in the Booking Contracts. See id. ¶¶ 3,6, 8, 15 & 16. Plaintiffs cannot now defeat WWE's motion to dismiss based upon unsupported allegations of an implied contract, the existence of which they have not pled or even suggested in their Complaint. See Car Carriers, 745 F.2d at 1107 (noting the impropriety of relying on plaintiff's opposition brief to "embellish the conclusory allegations of the complaint" or to otherwise "amend" the allegations in the complaint). Nor can plaintiffs attempt to use this Court to renegotiate the terms of fully executed and performed contracts (which contracts plaintiffs have accepted the benefits under) based upon unsupported and implausible allegations. See Blood v. Titan Sports, Inc., 3:94CV307-P, Memorandum of Decision and Order, at 14 (W.D.N.C. May 13, 1997) (copy attached at Exhibit A).

Plaintiffs' new characterization of their breach of contract claim also ignores the well-established Connecticut law providing that a claim alleging an implied at law contract is simply another name for a claim for unjust enrichment. See Meaney v. Conn. Hosp. Ass'n. Inc., 250 Conn. 500, 511, 735 A.2d 812, 819-20 (1999) ("[a]lthough, linguistically, such a claim is sometimes denominated an implied-in-law claim . . . it is more descriptive to call it what it is, a claim in restitution whose basis is [an] alleged unjust enrichment. . . ."); see also Bourret v. Miller, No. CV075002152, 2008 WL 2502563, at *2 (Conn. Super. Ct. June 5, 2008) (copy attached at Exhibit A) ("the Connecticut Supreme Court has repeatedly held unjust enrichment analogous with an implied in law contract, essentially rendering the two terms interchangeable" (internal quotations omitted)). Plaintiffs' "implied contract" argument is, therefore, just another name for their unjust enrichment claim.

Moreover, while plaintiffs' recitation of the elements of a claim for unjust enrichment (equally applicable to an implied at law contract claim (see Bourret, 2008 WL 2502563, at *2)) is correct, plaintiffs have not alleged facts to support the essential elements of such a claim – namely that WWE received some benefits and unjustly failed to pay the plaintiff for the benefits received. See Pls.' Opp. at

12.  There is no allegation that WWE failed to compensate each one of the named plaintiffs in accordance with the terms of their Booking Contracts for all services provided by them to WWE.  That plaintiffs are now unsatisfied with that compensation does not justify their use of this litigation to re-write the provisions of their fully performed Booking Contracts.  See Blood, 3:94CV307-P, Mem. of Dec. and Order, at 14.

In any event, Connecticut law is clear that claims alleging the breach of an implied at law contract, like those alleging unjust enrichment, cannot stand where an express contract governs the relationship between the parties and covers the same-subject matter that forms the basis for the implied contract claims.  See Meaney, 250 Conn. at 516-23 ("'an express contract between the parties precludes recognition of an implied-in law contract governing the same subject matter'" (quoting 1 E. Farnsworth, Contracts § 2.20, p. 176 (2d ed. 1998)); Fleet Dev. Ventures, LLC v. Brisker, No. 3:06CV0570 (HBF), 2008 WL 4000611, at *9 (D. Conn. Aug. 26, 2008) (same) (copy attached at Exhibit A); Alstom Power, Inc. v. Schwing Am., Inc., No. 3:04CV1311, 2006 WL 2642412, at *5 (D. Conn. Sept. 14, 2006) (same) (copy attached at Exhibit A).  Plaintiffs' Booking Contracts expressly govern the entirety of the relationship between them and WWE, and directly address all issues relating to compensation, retirement, worker's compensation, health and other benefits.  Thus, plaintiffs cannot now ignore the clear terms of their Booking Contracts, or state a plausible claim for relief, by implied contract or unjust enrichment claims at odds with their express written contracts.

While an implied contract or unjust enrichment claim may rest where the underlying contract is invalid or unenforceable (see, e.g., Alstom Power, 2006 WL 2642412, at *6), plaintiffs have not pled or even suggested (either in their Complaint or their Opposition) an applicable and recognizable principle of contract law sufficient to invalidate fully executed and performed contracts.  Plaintiffs' mere characterization of the Booking Contracts as a "sham and void" (see Complaint at ¶ 20; Pls.' Opp. at 11-12) is precisely the kind of rhetoric to be ignored on a motion to dismiss, since the Court is not to accept unsupported or vague allegations nor "legal conclusions, deductions or opinions couched as factual

allegations." See Mason v. Am. Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003) (citations omitted); see also Twombly, 127 S.Ct. at 1964-65. Accordingly, plaintiffs' conclusory allegations that the contracts are somehow void (without any supporting facts pled in the Complaint) are meaningless and cannot defeat a motion to dismiss otherwise insufficiently plead claims.[5]

### B. Plaintiffs' State Law Claims Are Barred By The Applicable Statute of Limitations

#### 1. Plaintiffs cannot recast their claims in light of the judicial admissions made in their Complaint

In opposing WWE's statute of limitations argument,[6] plaintiffs again disavow reliance on the Booking Contracts and argue that at some uncertain date and time after signing the Booking Contracts, plaintiffs' relationships with WWE somehow "evolved" or "mutated" into a common law employee-employer relationship. See Pls.' Opp. at 13-14. On this basis, plaintiffs argue that they did not suffer any loss until after the relationship evolved and that each alleged failure to reimburse or otherwise provide non-ERISA rights, incidents and/or benefits to plaintiffs constituted a separate and distinct breach (i.e., injury) with a separate statute of limitations. Id.

---

[5]     Plaintiffs' waiver argument is yet another example of their sleight-of-hand tactics intended to distract the Court from their failure to adequately plead claims for breach of contract and unjust enrichment. See Pls.' Opp. at 9-10. WWE's position is that in light of the plain and unambiguous terms of the Booking Contracts and well-established Connecticut state law (see, e.g., Meaney, 250 Conn. at 516-23), plaintiffs cannot maintain a breach of contract claim based upon the Booking Contracts nor can they maintain an unjust enrichment claim based upon some "implied at law" contract. Whether or not the Booking Contracts constitute a "waiver of plaintiffs' rights" is simply immaterial to the present motion to dismiss and to plaintiffs' substantive claims. Further, plaintiffs voluntarily executed their Booking Contracts and cannot now claim they did not have knowledge of the terms or consequences of those terms. See Phoenix Leasing, Inc. v. Kosinski, 47 Conn. App. 650, 654 (1998) ("The general rule is that where a person of mature years and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is [that person's] duty to read it and notice of its contents will be imputed to [that person] if [that person] negligently fails to do so . . . ." (internal quotations omitted)); see also Consol. Edison Co. of New York, Inc. v. United States, 221 F.3d 364, 371 (2d Cir. 2000); Brisker, 2008 WL 4000611, at *9 (same). Moreover, even assuming plaintiffs' Booking Contracts could constitute a waiver, Connecticut law is clear that "plaintiffs cannot escape the consequences of a waiver into which they voluntarily entered merely by establishing that they did not read it." Delk v. Go Vertical, Inc., 303 F. Supp. 2d 94, 99 (D. Conn. Feb. 3, 2004).

[6]     As argued in WWE's original Memorandum in Support of its Motion to Dismiss, plaintiffs' claims are time-barred under the applicable six-year statutes of limitation. See WWE Memo. at 15-17; Conn. Gen. Stat. § 52-576 (6-year statute of limitations applicable to breach of contract claims); Gianetti v. Blue Cross & Blue Shield of Conn., Inc., No. 3:07cv01561 (PCD), 2008 WL 1994895, at *8 n.4 (D. Conn. May 6, 2008) (6-year state of limitations applicable to unjust enrichment claims) (copy attached at Exhibit A).

Plaintiffs' Complaint, however, does not mention any evolution or mutation of plaintiffs' status let alone plead when such mutation occurred. Similarly, plaintiffs' Complaint does not allege even one actual instance of such a denial of benefits, or any facts to support a "separate and distinct breach" argument. Instead, plaintiffs' Complaint expressly alleges that plaintiffs "were improperly classified <u>throughout their tenure</u>" with WWE (see Complaint at ¶ 8 (emphasis added)). Simply put, plaintiffs' Complaint sets forth the following position: plaintiffs suffered injury as a result of their allegedly improper classification as independent contractors, which alleged misclassification arose directly from plaintiffs' Booking Contracts. <u>See</u>, <u>e.g.</u>, id. at ¶ 6. Plaintiffs' Complaint could not be clearer in claiming that they were improperly classified – and denied all benefits on that basis – at all times during their relationships with WWE and not in separate and distinct events. <u>See id.</u> ¶ 8; <u>see also id.</u>, ¶4.

Plaintiffs' allegations are judicial admissions for purposes of this lawsuit and motion and they cannot contradict or disregard those admissions. <u>Official Comm. of the Unsecured Creditors of Color Title, Inc. v. Coopers & Lybrand, LLP</u>, 322 F.3d 147, 167 (2d Cir. 2003) (allegations made in a party's complaint constitute judicial admissions to which that party is "bound throughout the course of the proceeding." (internal quotation omitted)); <u>Brennan v. Metro. Life Ins. Co.</u>, 275 F. Supp. 2d 406, 409 (S.D.N.Y. 2003); <u>Union Eng'g Co. v. Titan Indus. Corp.</u>, No. 83 Civ. 6369, 1985 WL 1979, at *1 (S.D.N.Y. June 27, 1985) (copy attached at <u>Exhibit A</u>). Nor can plaintiffs amend their Complaint through their Opposition or use their brief to embellish the vague allegations raised in their Complaint. <u>See Wright</u>, 152 F.3d at 178; <u>Andreo</u>, 1986 WL 15663, at *10 n.7; <u>see also Car Carriers</u>, 745 F.2d at 1107.

The theory underlying plaintiffs' claims for relief is, as it must be in light of the admissions made in the Complaint, that the alleged injury suffered is the misclassification itself – which misclassification serves as the basis for the denial of all "rights, incidents and benefits" of employment. <u>See</u> Complaint at ¶¶ 6, 8, 16, 17, 21. This misclassification indisputably occurred at the effective date of each of the plaintiff's Booking Contract, at which time plaintiffs knew, or reasonably should have known, that they were expressly labeled as "independent contractors" and were expressly denied all of the present and

future "rights, incidents and benefits" of employment.  See Brennan, 275 F. Supp. 2d at 409 (ERISA cause of action accrued at execution of independent contractor agreement which contained a clear repudiation of eligibility for all employee benefits); Downes v. JP Morgan Chase & Co., No. 03 Civ. 8991 (GEL), 2004 WL 1277991, at *3-4 (S.D.N.Y. June 8, 2004) (same) (copy attached at Exhibit A).  Under Connecticut state law, breach of contract claims and unjust enrichment claims accrue at the time the alleged injury was inflicted, whether or not the plaintiff had any knowledge of the injury sustained.  See Tolbert v. Connecticut Gen. Life Ins. Co., 257 Conn. 118, 124-25 (2001).  As plaintiffs' Booking Contracts were all entered into more than six years before the filing of the present lawsuit, plaintiffs' claims are time barred.[7]

### 2. The "continuing duty" or "continuing course of conduct" doctrine does not apply to plaintiffs' claims

Plaintiffs also argue that the statutes of limitation should be tolled under the so-called "continuing duty" or "continuing course of conduct" doctrine.  See Pls.' Opp. at 15.  Plaintiffs, however, have not pled any allegations to even suggest a plausible entitlement to tolling of the statutes of limitation on any grounds, never mind under the continuing conduct doctrine.  Plaintiffs admit as much in their Opposition.  See id.  Accordingly, the Court should not consider plaintiffs' untimely and unpled continuing duty claim and should dismiss plaintiffs' claims as time-barred.  See Tolbert, 257 Conn. at 126 (dismissing claims and disregarding continuing duty argument where "plaintiff failed to allege continuing duty in her complaint").

The continuing duty doctrine is inapplicable to plaintiffs' claims in this case.  The continuing duty doctrine is a very narrow doctrine that is applicable only to tort-based claims in which the alleged harm is

---

[7] Furthermore, each alleged denial of a right, incident or benefit of employment is not and cannot be a separate breach of contract or other injury for statute of limitations purposes.  Instead, each such denial, at best, merely represents additional damages suffered, if any, as a result of the alleged misclassification and express denial of all present and future benefits that occurred when plaintiffs executed their Booking Contracts.  See Downes, 2004 WL 1277991, at *4 n.6 (finding no "continuing violation" or discrete and separate injuries where "the relevant breach or violation is Downes's misclassification . . . that its effects . . . continue[d] to be felt over a period of time does not render that single, wrongful act a 'continuing violation' (internal quotations omitted)); Schultz v. Texaco Inc., 127 F. Supp. 2d 443, 447 (S.D.N.Y. 2001); see also Brennan, 275 F. Supp. 2d at 410 n.9.  Thus, plaintiffs' unsupported (and unpled) allegations of "separate" and "discrete" injuries do not save plaintiffs' claims from the operation of the applicable statutes of limitation.

difficult to determine; and the doctrine has not been extended to employment related actions. See Williams v. Cushman and Wakefield of Connecticut, Inc., No. CV 95-0148747 S, 1998 WL 246493, at *2 (Conn. Super. Ct. May 5, 1998) (copy attached at Exhibit A); Rosato v. Mascardo, 82 Conn. App. 396, 402-403 (2004). Further, "plaintiffs' interpretation of the continuing violation doctrine would lead to the illogical result that no claim [alleging a misclassification] could ever be time-barred, since every termination and every 'mis-classification' has the 'continuing' effect of rendering an individual ineligible to receive employment benefits." Texaco Inc., 127 F. Supp. 2d at 447. Moreover, "the continuing course of conduct doctrine has no application after the plaintiff has discovered the harm." Rosato, 82 Conn. App. at 405. The alleged injury to plaintiffs – i.e., the misclassification and express denial of benefits – was plainly stated in the Booking Contracts executed by plaintiffs. Plaintiffs thus had clear knowledge of their classification as independent contractors and their ineligibility for any of the benefits, to which they now claim entitlement, at the time they executed their Booking Contracts. Accordingly, the continuing duty doctrine is inapplicable and does not toll the applicable statutes of limitation. See Downes, 2004 WL 1277991, at *4 n.6. The fact that the after effects of the alleged misclassifications were allegedly experienced by plaintiffs over a period of time "does not render that single, [allegedly] wrongful act a 'continuing violation'" or a continuing course of conduct. Id.; see also Texaco Inc., 127 F. Supp. 2d at 447. Accordingly, plaintiffs are not entitled to amend their Complaint to allege tolling of the statutes of limitation pursuant to the continuing duty doctrine, as such amendment would be futile. See Gianetti, 2008 WL 1994895, at *9; Book v. Lupinaci, No. 3:04CV1661 (PDC), 2006 WL 1182275, at *6 (D. Conn. Apr. 28, 2006) (copy attached at Exhibit A).

### C. Plaintiffs Are Not Entitled To Amend Their Complaint To Add Claims Under ERISA

#### 1. Plaintiffs have not moved to amend their complaint and the Court imposed deadline to amend has expired

In their Opposition, plaintiffs devote eleven pages to defend ERISA claims that they have not pled and that do not appear in the operative Complaint. See Pls.' Opp. at 19-29. A party cannot amend its

complaint through briefs or other memoranda filed in opposition to a motion to dismiss. See Car Carriers, 745 F.2d at 1107; Wright, 152 F.3d at 178; Andreo, 1986 WL 15663, at *10 n.7. While plaintiffs request that they be allowed to amend the Complaint to add direct ERISA claims, plaintiffs have not, at any time during the pendency of this action, properly moved to amend the Complaint. Plaintiffs are barred from now moving to so amend, as the Court-imposed deadline for all "amendment of the pleadings" expired on October 21, 2008. See Court Order on Pretrial Deadlines (Docket No. 2).

In a misguided effort to deflect the blame for their own failure to amend their Complaint during the express time period for doing so, plaintiffs allege that "defendant refused to consent to an extension of time to respond to the pending Motion to Dismiss to allow such an amendment." Pls.' Opp. at 19. WWE did not, in any way, prevent plaintiffs from amending their Complaint, nor could it have done so.[8]

### 2. Plaintiffs' proposed ERISA claims are barred by the statute of limitations and therefore amendment is futile

Even assuming plaintiffs had timely moved to amend their Complaint, plaintiffs' ERISA claims are barred by the applicable six-year statute of limitations. See Gianetti, 2008 WL 1994895, at *9 n.5. Plaintiffs received clear and unequivocal notice in the plain and unambiguous language of the Booking Contracts that they were to be treated as independent contractors and that they would be ineligible throughout their tenure for all retirement, health, and other benefits at the moment they executed their Booking Contracts. See Pls.' Booking Contracts at Sections 9.11-9.13 (Exhibits A, B, & C. to WWE Memo.). As such, plaintiffs' ERISA causes of action accrued at the time they executed their Booking Contracts – more than six years before the filing of the present Complaint. Plaintiffs' arguments to the contrary are inconsistent with the allegations pled in their Complaint, misinterpret governing law and rely on wholly inapposite cases.

---

[8] Plaintiffs have never requested extra time to amend their Complaint, but only requested time to "fil[e] a new action with additional named plaintiffs and may subsequently move to consolidate any such new action with this matter" and expressly stated that they did "not contemplat[e] filing an Amended Complaint in this action." Plaintiffs' Motion for Extension of Time (Docket No. 19). The Court, in response to plaintiffs' motion, ordered that "[t]he extension of time is granted and plaintiff shall have until 11/10/08 solely for the purpose of filing any opposition to defendant's motion to dismiss." See Court's Electronic Order dated October 22, 2008 (Docket No. 21) (emphasis added).

Plaintiffs again construct alleged factual disputes that are inconsistent with the allegations in their Complaint and are, as such, irrelevant to the evaluation of the WWE's motion. See Pls.' Opp. at 20. As noted above, plaintiffs' Complaint is clear that the alleged misclassification of plaintiffs and the alleged denial of all "rights, incidents and benefits" of employment to plaintiffs occurred at all times "throughout their tenure." See Complaint at ¶ 8. Plaintiffs are bound by the judicial admissions made in their Complaint. See Section IV.B.1, supra. Plaintiffs thus cannot avoid dismissal by arguing they were "imaginary evolutionary employees," or that WWE "confused plaintiffs' status" (see Pls.' Opp. at 20), where plaintiffs' Complaint alleges that plaintiffs were treated as independent contractors and denied all employee-related benefits at all times during their relationships with WWE. Id. ¶¶ 4, 5, 6, & 8.

It is well-established in this Circuit that a cause of action under ERISA accrues "upon a clear repudiation by the plan that is known, or should be known, to the plaintiff." Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 49 (2d Cir. 1999). Once a plaintiff has clear and unequivocal notice that he or she is not entitled to certain benefits, the statute of limitations on an ERISA claim begins to run. See Brennan, 275 F. Supp. 2d at 409-10 (citing Ambris v. Bank of New York, No. 96 Civ. 0061, 1998 WL 702289, at *6 *(S.D.N.Y. Oct. 2, 1998) (copy attached at Exhibit A)). Where, as here, a plaintiff signs an express agreement that classifies him or her as an independent contractor and that contains a "clear and unequivocal repudiation of employee benefits," the cause of action accrues at the date of the execution of said agreement. Id.; Downes, 2004 WL 1277991, at *3; see also Walker v. Pharm. Research and Mfrs. of Am., 439 F. Supp. 2d 103, 108 (ERISA cause of action accrued on "the date that the parties executed the independent contractor agreement"). An express agreement providing for an ineligibility for benefits is sufficient notice because it clearly indicates that the relevant benefits plans "would repudiate any and all claims [plaintiffs] would [or could] make for benefits."[9] See Brennan, 275 F. Supp. 2d at 410 n.9.

---

[9] In light of the language of the Booking Contracts, making clear that plaintiffs, not the WWE, were responsible for obtaining their own retirement, workers compensation, health, life, disability and other similar benefits and that plaintiffs were not eligible to participate in any of WWE's benefit plans, see Exs. A, B. & C. to WWE Memo. at Sections 9.11-9.13, it is implausible (and not supported by the allegations in the Complaint) for plaintiffs to contend, that they

Unable to rebut the above-described principle, plaintiffs simply contend that these cases – i.e., Brennan and Downes – "were wrongly decided." See Pls.' Opp. at 22. However, it is undisputable that both Brennan and Downes are entirely consistent with the Second Circuit's opinion in Carey, which case plaintiffs explicitly rely upon. See Pls.' Opp. at 20-21. In fact, the holdings of Brennan and Downes flow directly from the simple holding of Carey – that a cause of action under ERISA accrues "upon a clear repudiation by the plan that is known, or should be known, to the plaintiff – regardless of whether the plaintiff has filed a formal application for benefits." Carey, 201 F.3d at 49. Plaintiffs have failed to produce any case law or other authority to the contrary.[10]

Moreover, the cases cited by plaintiffs to support their position, Nahoun v. Employees' Pension Plan of Credit Suisse First Boston, 2005 WL 1476453 (S.D.N.Y. June 22, 2005) (copy attached at Exhibit A) and Schultz v. Stoner, 308 F. Supp. 2d 289 (S.D.N.Y. 2004), are inapposite. See Pls.' Opp. at 22-24. In Nahoun, the plaintiff alleged that he was denied benefits, not by virtue of his classification or treatment, but under the express terms of the benefits plans. See Nahoun, 2005 WL 1476453, at *3. The

---

were unaware that they were ineligible for benefits at the time they executed their Booking Contracts or at any time during their relationships with the WWE. See Downes, 2004 WL 122991, at *4 ("[i]t blinks reality to assert that [plaintiff] remained unaware of this alleged breach, for its consequences – that she did not receive employee benefits – would have soon, if not immediately, been apparent"); see also Phoenix Leasing, 47 Conn. App. at 654; Consol. Edison Co. of New York, 221 F.3d at 371; Brisker, 2008 WL 4000611, at *9; Delk, 303 F. Supp. 2d at 99.

[10] Plaintiffs are correct that the opinion of the District Court for the Southern District of New York in Downes v. J.P. Morgan Chase & Co. is "directly on point." See Pls.' Opp. at 24-25. In Downes, the plaintiff argued that her employer had improperly classified her as an independent contractor and had, on that basis, denied her ERISA-governed benefits throughout her ten-year tenure with the defendant. See Downes, 2004 WL 1277991, at *3-4. After noting with approval the accrual standards set forth in Carey and Brennan, the Court found that "the alleged breach occurred when [defendant] classified [plaintiff] as an independent contractor rather than as an employee, thereby rendering her ineligible for benefits." Id. at *4. The court expressly dismissed plaintiff's argument – not raised in her complaint – that prior to discovery "it would be premature to infer that she knew that [defendant] had not been providing her employee benefits." Id. The court found that because plaintiff made no such allegation in her complaint regarding her lack of knowledge, "no rule of law requires the Court to indulge the assumption, which cannot fairly be inferred from any of the facts alleged in the complaint, that the plaintiff remained unaware of her own employment status, and had no idea she was not receiving medical, sick leave, or vacation benefits, for years after allegedly commencing full-time work for [defendant]." Id. at *4 n.5. Moreover, like the plaintiffs here, the plaintiff in Downes alleged that she was an employee from the outset of her relationship with defendant (and not an "evolutionary employee"). See id. at *4 n.5, n.6. Accordingly, the court found that the plaintiff's claim accrued upon the misclassification (or shortly thereafter). Id. at *4. The facts of the present case are even more compelling as plaintiffs were informed in express terms in their Booking Contracts that they would not receive employment-related benefits from WWE.

- 12 -

court made much of this distinction and expressly found that the facts and findings in Brennan and Downes were inapplicable on these grounds. See id. at *3 & n.29.

The opinion in Schultz v. Stoner is similarly inapplicable. The statute of limitations discussion in Schultz concerned claims under Section 502(a)(3) of ERISA (29 U.S.C. § 1132(a)(3)) alleging breach of fiduciary duty, which claims are subject to a separate statute of limitations with distinct accrual principles. See Schultz, 308 F. Supp. 2d at 298-99. Plaintiffs, in this case, contemplate claims, not for breach of fiduciary duty, but under Section 502(a)(1)(B). That the court offered to re-entertain arguments regarding the accrual of the plaintiffs' Section 502(a)(1)(B) claim in Schultz does not indicate the court's position on the merits of such an argument. In any event, the plaintiffs in Schultz, unlike plaintiffs here, did not sign a written agreement that expressly indicated their ineligibility for benefits. The court's allowance of reargument in this factually distinct case thus has no bearing here.

Underlying plaintiffs' statute of limitations arguments is the premise that a sufficient "repudiation" must come from a benefits plan administrator or fiduciary and must comply with the administrative provisions of ERISA and the regulations promulgated thereunder. See Pls.' Opp. at 21, 25-27.[11] This standard, however, would affirmatively require a plaintiff to have filed a formal claim for benefits (thus triggering the plan administrator or fiduciary's obligations to respond) for the statute of limitations to begin to run. The Second Circuit expressly rejected this position in Carey. See Carey, 201 F.3d at 49 ("cause of action accrues upon a clear repudiation . . . that is known, or should be known, to the

---

[11] In support of their argument, plaintiffs cite to Veltri v. Building Serv. 32B-J Pension Fund, 393 F.3d 318 (2004). Veltri does not support plaintiffs' argument and is inapplicable to the present case. In Veltri, the Second Circuit found that defendant plan administrator's failure to adequately respond to plaintiff's formal requests for pension benefits – pursuant to the regulations promulgated under ERISA – constituted sufficient "concealment" of the plaintiff's right to bring a cause of action to support equitable tolling of the statute of limitations. See id. at 323-24. The opinion in Veltri does not require that a "clear repudiation" of eligibility for benefits originate from a plan fiduciary/administrator in order for an ERISA cause of action to accrue. Nor does it call into question or address the statute of limitations analysis set forth in Carey, which governs claims made in the absence of a formal claim for benefits. The opinion in Veltri stands for the simple proposition that once a formal request for pension benefits is made (compliant with the provisions of ERISA and the regulations promulgated thereunder), the plan administrator must respond in equal compliance with ERISA and its regulations, and that failure to so respond may be sufficient to warrant an equitable tolling of the statute of limitations. See id. at 323-25.

- 13 -

plaintiff – <u>regardless of whether the plaintiff has filed a formal application for benefits</u>" (emphasis added)).

Moreover, plaintiffs' position is patently absurd and inconsistent with the policy underlying statutes of limitation. According to plaintiffs' theory, a performer, like plaintiffs here, could voluntarily execute an agreement that contains an express repudiation of all employee benefits, yet, despite that clear denial of all future benefits, that performer would have an unlimited period of time to bring a claim challenging his or her treatment. In other words, a potential plaintiff could affirmatively delay the running of the statute of limitations simply by taking no action and making no formal claim for benefits until he deems it convenient. This is not the law and such a result defies reason. As the Second Circuit recognized in Carey, in connection with an ERISA claim for pension benefits:

> To hold [that an ERISA claim accrues only upon denial of a formal application] would require all pre-benefits claims against an employee's pension fund to be delayed until a formal application for benefits is filed. Because an application for pension benefits is normally not made until after an employee has retired, the delay, with its negative effects on the availability of witnesses and evidence is potentially great.

Id. at 48 (quoting Martin v. Construction Laborer's Pension Trust, 947 F.2d 1381, 1385 (9th Cir. 1991)). This policy is equally applicable to plaintiffs' claims in this case.

In light of the foregoing, plaintiffs' proposed ERISA claims are time-barred by the applicable six-year statute of limitations. See Brennan, 275 F. Supp. 2d at 409-10. Where a proposed amendment is futile by virtue of the operation of a statute of limitations, the Court must deny leave to amend. See Gianetti, 2008 WL 1994895, at *9;[12] see also WWE Memo. at 29-30 (citing cases holding the same).

### 3. Plaintiffs' proposed ERISA claims fail because plaintiffs have failed to join the necessary and proper parties

Section 502(a)(1)(B) of ERISA permit suits to recover benefits to be brought only against relevant benefits plans, as entities, and its provisions are not enforceable against any other person or entity, unless

---

[12] This Court's decision in Gianetti is directly on point. In Gianetti, the Court found plaintiff's state law claims – including claims for breach of contract, quantum meruit, and unjust enrichment – preempted by ERISA. See Gianetti, 2008 WL 1994895, at *3-6. The Court, furthermore, denied plaintiff's request to amend his Complaint to add claims under ERISA, finding, in part, that the applicable statute of limitations barred any such ERISA claims. Notably, plaintiffs in this case fail to address or even reference the Gianetti decision in their Opposition.

liability against such person is established pursuant to his or her individual capacity. See 29 U.S.C. §§ 1132(a)(1)(B), 1132(d); see also Lee v. Connecticut Gen. Life Ins. Co., 991 F.2d 1004, 1009 (2d Cir. 1993) ("ERISA permits suits to recover benefits only against the Plan as an entity" (internal quotations omitted)); Jass v. Prudential Health Care Plan Inc., 88 F.3d 1482, 1490 (7th Cir. 1996); Gelardi v. Pertec Computer Corp., 761 F.2d 1323, 1324 (9th Cir. 1985). Accordingly, a plaintiff pursuing a claim for employee benefits under ERISA must bring his or her claims against the relevant benefits plan or plans, and the failure to join the plans mandates that the Court dismiss such claims. See Lee, 991 F.2d at 1009-10; Jass, 88 F.3d at 1490; Gelardi, 761 F.2d at 1324; McManus v. Gitano Group, Inc., 851 F. Supp. 79, 81 (E.D.N.Y. 1994). Plaintiffs in this case have not brought claims against any of WWE's benefits plans – all necessary and indispensable parties – and, therefore, plaintiffs cannot add ERISA claims to the present action. For this reason as well, plaintiffs' proposed amendments are futile.[13]

## V. CONCLUSION

For the foregoing reasons, defendant World Wrestling Entertainment, Inc. respectfully requests that the Court dismiss with prejudice plaintiffs' individual claims and putative class claims.

---

[13] Plaintiffs' proposed amendment would also be futile because they have failed to exhaust their administrative remedies under WWE's benefit plans. See WWE Memo. at 30. Plaintiffs' attempt to argue that exceptions exist to the exhaustion requirement misses the point. See Pls.' Opp. at 28. They have offered neither factual allegations to support exhaustion or any exception to the exhaustion requirement. Indeed, plaintiffs do not even allege that they ever made a claim for any benefits—the essential first step in the process. It is well-established that a "formulaic recitation of the elements of a cause of action" is insufficient to satisfy the pleading standards under the Federal Rules of Civil Procedure and such allegations cannot suffice to plead a "plausible" cause of action. See Twombly, 127 S.Ct. at 1964-65.

Respectfully submitted,

WORLD WRESTLING ENTERTAINMENT, INC.


/s/ Douglas W. Bartinik_____
Jerry S. McDevitt (ct11783)
jerry.mcdevitt@klgates.com
Richard W. Hosking (ct18265)
richard.hosking@klgates.com
K&L GATES LLP
535 Smithfield Street
Pittsburgh, PA 15222
(412) 355-6500 (telephone)
(412) 355-6501 (facsimile)

Felix J. Springer (ct05070)
Stanley A. Twardy (ct05096)
Douglas W. Bartinik (ct26196)
fjspringer@daypitney.com
satwardy@daypitney.com
dwbartinik@daypitney.com
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
(860) 275-0184 (telephone)
(860) 275-0343 (facsimile)

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 22, 2008.


/s/
Douglas W. Bartinik

- 16 -