UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SCOTT LEVY, et al | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 3:08CV1289(PCD) |
| | : | |
| WORLD WRESTLING ENTERTAINMENT, INC., | : | |
| | : | |
| | : | |
| Defendant. | : | April 17, 2009 |

### PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO ALTER OR AMEND AND/OR FOR RELIEF FROM JUDGMENT

### INTRODUCTION

Plaintiffs Scott Levy and Christopher Klucsarits submit this Reply Memorandum to respond to defendant World Wrestling Entertainment, Inc.'s Memorandum in Opposition to Plaintiffs' Motion to Alter or Amend and/or for Relief from Judgment.

### ARGUMENT

#### I.     Plaintiffs' Motion Was Not Untimely.

Defendant ("WWE") argues that plaintiff's F. R. Civ. P. 59 motion to alter or amend judgment was untimely because, while it was filed with ten days of entry of Judgment as required by Rule 59, it was not filed within ten days of this Court's Memorandum of Decision, as required for motions for reconsideration under D. Conn. L. Civ. R. 7(c)(1). In support of this contention, WWE relies on *City of Hartford v. Chase*, 942 F.2d 130, 133 (2d Cir. 1991).

Quite simply, WWE has it backwards: the point of *Chase* is not that Rule 59(e) motions must be treated as Rule 7(c) motions for reconsideration, but that because post-judgment motions

for reconsideration seek to re-open a district court's decision, they have the same effect as Rule

59(e) motions for purposes of tolling the period in which an appeal must be filed and are to be

treated as Rule 59(e) motions:

> Motions for reconsideration ... are as a practical matter the same thing as motions
> for amendment of judgment under F. R. Civ. P. 59(e) – seeks to reopen a district
> court's decision ... – ... and must be treated the same as a motion under Rule 59.

*Id.* at 133; *accord United States ex rel. Smith v. Yale University*, 2006 WL 1168446 (D. Conn.

April 28, 2006) (Dorsey, J.) ("'a motion under [D. Conn. L. R. Civ. P. 7(c)] must be treated the

same as a motion under Rule 59[(e)],'" quoting *Chase* [bracketed materials in original]*).

The meaning of *Chase* was explained in *United States ex rel. McAllan v. City of New

York*, 248 F.3d 48 (2d Cir. 2001), a case involving a post-judgment motion for reargument under

S.D.N.Y. L. Civ. R. 6.3 (based, as here, on the contention that plaintiffs should be allowed to file

an amended complaint.  Relying on *Chase* and other cases, the Second Circuit held in *McAllan*

that  "a postjudgment motion requesting alteration of the judgment but denominated as

something other than a motion under Rule 59 is generally treated as having been made under

Rule 59(e), thereby extending the time to appeal, if the motion was filed with the 10-day period

allowed for a Rule 59(e) motion." *Id.* at 52 (internal quotation omitted).

As Judge Munson in the Northern District of New York explained, relying on *Chase* and

*McAllan*:

> [M]otions for reconsideration are treated as motions brought pursuant to
> Fed.R.Civ.P. 59(e) for purposes of measuring the timeliness of their filing.

*Allstate Insurance Company v. Fleury*, 2007 WL 1200137, *2 (N.D.N.Y. April 20, 2007)

(Munson, J.).  In *Fleury*, where the plaintiff's motion for reconsideration was filed 15 days after

2

the decision but 14 days after entry of judgment, Judge Munson ruled that since a Rule 59 post-judgment motion must be filed with ten days of entry of judgment (excluding weekends and holidays , *see* F.R.Civ.P 6(a)), "the plaintiff has made a timely filing of its motion in the case at bar." *Id.*[1]

Plaintiff's March 10, 2009 Motion to Alter or Amend Judgment was filed within ten days (excluding weekends and holidays) of the entry of the February 24,2009 Judgment in this action and was, thus, timely.[2]

---

[1] Although the dates of entry of judgment and of plaintiff's motion are not stated in Judge Munson's decision, the electronic docket sheet for the case [No. 5:99-cv-1261 (N.D.N.Y)] reflects entry of Judgment on September 19, 2001 [Dkt. entry 43] and the filing of plaintiff's Motion for Reconsideration on October 3, 2001 [Dkt. entry 44]. The docket sheet also indicates that the court's Memorandum of Decision, which according to the court's decision was dated September 12, 2001, *Fleury*, 2007 WL 1200137, at *2, was entered on September 18, 2001 [Dkt entry 42].

[2] Plaintiff submits that the court's holding to the contrary in *Palmer v. Sena,* 474 F.Supp.2d 353, 354 n.2 (D. Conn. 2007) (Hall, J.) misconstrues *Chase* and is not supported by the sole authority cited in the footnote, *Pappas v. New Haven Police Dept.*, 2002 WL 1627601, at *1, n.1 (D. Conn. 2002) (Fitzsimmons, M.J.). *Pappas* cited in *Palmer Pappas* involved a motion for reconsideration of the denial of a motion for summary where no judgment had been entered, *id.* at *1, and the footnote in *Pappas* cited in *Palmer* addresses the computation of the ten day period pursuant to F.R.Civ.P. 6a (exclusion of weekends and holidays). Plaintiff further notes that in *Palmer*, Judge Hall ruled that courts have discretion to consider untimely motions for reconsideration, *Palmer* at 354, and proceeded to consider the merits of the plaintiff's motion even though she believed it to be untimely.

*Gaither v. Housing Auth. of New Haven*, 2008 WL 906843, at 1 (D. Conn. Mar. 31, 2008) (Eginton, J.), involved a motion for reconsideration filed 4½ months after entry of a preliminary injunction during the pendency of an interlocutory appeal from the preliminary injunction. No judgment has ever entered in *Gaither*, and the meaning of the court's apparent attribution of the text of Local Rule 7(c) to a Rule 59(e) motion is unclear.

**II.    Plaintiffs Did Not Improperly Delay Seeking Permission to Amend Their Complaint.**

WWE argues that the Court properly denied plaintiffs leave to file an amended complaint because plaintiffs failed to move for permission to do so prior to the Court's ruling dismissing this action.  WWE cites to Judge Arterton's decision in *In re Star Gas Securities Litigation*, 241 F.R.D. 428, 431 (D. Conn. 2007), for the proposition that "a busy district court need not allow itself to be imposed upon by presentation of theories seriatim."  (Def. Mem. at 6-7).

But in *Star Gas*, the district court held a pre-filing conference with the parties at which the purported defects in plaintiffs' Complaint were discussed and offered plaintiffs the opportunity to amend their pleading to address the alleged defects.  *Id.* at 432.  The *Star Gas* plaintiffs expressly declined the opportunity to do so.  Only after the court had ruled on defendants' motion to dismiss did the plaintiffs claim that they should be allowed to cure the defects.  *Id.*

Here, the situation is exactly the opposite of the situation in *Star Gas* and, plaintiffs submit, it was exactly the opposite because of WWE's gamesmanship.  After removing this action from state court, WWE requested plaintiffs' consent to a thirty-day extension of time for the filing of a response to plaintiffs' Complaint.  Plaintiffs acceded to this requested, without restriction.  However, when plaintiffs sought a three-week extension of time to respond to defendants' Motion to Dismiss, defendants would only consent to plaintiff's requested extension on condition that plaintiffs agree not to file an amended complaint. [*See* Plaintiffs' October 20, 2008 Motion for Extension of Time (Dkt entry 17), and Defendants' October 21, 2008 Response (Dkt entry 20).  In granting plaintiffs' Motion for Extension of Time, this Court accepted the

limitation sought by defendants and ordered that plaintiffs were "limited solely to filing any opposition to defendants' Motion to Dismiss." (October 22, 2008 Order, Dkt entry 21).

Defendants, thus, chose to have plaintiffs defend their original state-court Complaint before addressing an Amended Complaint that would flesh out the facts responsive to defendants' statute of limitations arguments and raise the federal claims under ERISA, not asserted in the state-court Complaint. Plaintiffs submit that it is patently unfair for defendants to seek and obtain an order precluding plaintiffs from amending their Complaint to address claims in defendants' Motion to Dismiss and then to argue that plaintiffs forfeited their right to do so.[3]

Significantly, absent WWE's successful insistence on foreclosing plaintiffs from filing an Amended Complaint with their Memorandum in Opposition to Defendants' Motion to Dismiss, plaintiffs would have had the absolute right, pursuant to F.R.Civ.P. 15(a) to do so as a matter of course. *See* F.R.Civ. P. 15(a) ("A party may amend its pleading once as a matter of course (A) before being served with a responsive pleading).

Nor is this a situation where plaintiffs sandbagged the Court, as the *Star Gas* plaintiffs appeared to have done with Judge Arterton. Plaintiffs expressly advised the Court in their Memorandum in Opposition to Defendants' Motion to Dismiss that they were prepared to amend their Complaint to assert ERISA claims but had been precluded from doing so:

> To the extent that WWE maintains applicable ERISA plans, plaintiffs are prepared to amend their Complaint to assert claims under those plans. Plaintiffs were never personally advised of the ERISA plans maintained by WWE on behalf of its employees. However, since the filing of this action, plaintiffs have identified at least two

---

[3] WWE also refers in their Memorandum to the time limit for amendments set forth in the Court's standing scheduling order. But no Rule 26(f) conference was ever held in this case to reach agreement on any scheduling deadlines since WWE took the position that its motion to dismiss should be ruled on first.

5

such ERISA plans: the World Wrestling Entertainment, Inc. Group Insurance Plan and the World Wrestling Entertainment, Inc. 401(k) Plan.

>   Plaintiffs have been prepared to file an Amended Complaint asserting ERISA claims under these plans, but defendant refused to consent to an extension of time to respond to the pending Motion to Dismiss to allow such an amendment. See Defendant's Response to Motion for Extension of Time [Dkt. No. 20].

Plaintiffs' November 26, 2008 Memorandum in Opposition to Defendants' Motion to Dismiss at

19.

>   Plaintiffs' remaining amendments in their Proposed Amended Complaint are directed to responding to the Court's apparent belief that their original Complaint lacked necessary specificity as to the non-ERISA benefits plaintiffs were denied and factual allegations to enable them to defeat defendants' asserted statute of limitations defense. As to this first issue, in their Memorandum opposing defendants' Motion to Dismiss, plaintiffs expressly identified the potential non-ERISA benefits encompassed by the allegations of paragraph 17 of their Complaint:

>>   The allegations of the First Count of plaintiffs' Complaint encompass numerous forms of non-ERISA compensation not subject to ERISA preemption. Thus, for example, plaintiffs incurred substantial travel-related expenses (travel, hotel and food) for required travel in the course of their employment to performances or for promotional appearances specified by defendant. Other employees of WWE who were required to undertake the same travel were reimbursed by WWE for those same travel expenses. Plaintiffs assert that such employment-related travel is a reimbursable expense for WWE *employees*, and that they are entitled to recovery of such expenses to the extent that they were wrongly made to incur such expenses as a result of their misclassification as "independent contractors."

>>   Likewise, to the extent that defendant provided vacation pay, sick pay or other forms of non-ERISA leave to its *employees*, plaintiffs are entitled to recover such benefits which they were denied as a result of their having been wrongly labeled as independent contractors. Similarly, to the extent that there were any other non-ERISA plans that apply to all employees of defendant WWE – such as,

6

> for example, a stock option plan – plaintiffs would be entitled to recover the benefit of such non-ERISA plans pursuant to the breach of contract allegations of paragraph 17 of the First Count.

*Id.* at 17-18.

In response to this Court's ruling that the unspecified allegation of lost "rights, incidents and benefits" in paragraph 17 of the original Complaint was an insufficient allegation, plaintiffs are reasonably entitled to file an amendment specifying the information that plaintiffs identified in their Memorandum and that defendant previously foreclosed them from amending their Complaint to add.

This is equally true of the allegations in plaintiffs' proposed Amended Complaint that make clear the factual basis of plaintiffs' defense to WWE's statute of limitations arguments. Again, plaintiffs repeatedly advised the Court in their Memorandum in opposition to WWE's Motion to Dismiss that defendants' statute of limitations arguments could not be resolved on the face of plaintiffs' Complaint because, when filed in state court, plaintiffs were not required to plead facts defeating a statute of limitations special defense. Plaintiffs further alerted the Court that these factual disputes required inquiry into how WWE treated plaintiffs and what each plaintiff reasonably understood subsequent to the dates on which plaintiffs' Booking Contracts were signed. As plaintiffs stated at the outset of their Memorandum:

> Defendant further argues that, because plaintiffs' Booking Contracts were signed more than six years prior to the commencement of this action, their claims for breach of contract and unjust enrichment, and their potential claims under ERISA, are time-barred. But, as with the determination of plaintiffs' legal status as employees, the resolution of defendants' statute of limitation defense necessarily turns on the resolution of critical disputed facts: When did plaintiffs' employment relationship with defendant turn from the independent contractor status described in

7

their Booking Contracts to the employer-employee relationship plaintiffs describe in their Complaint? When did plaintiffs suffer the losses of which they complain? Was defendant's conduct continuing in nature or did defendant mislead plaintiffs about their rights and status, so as to toll the statute of limitations? When ultimately did plaintiffs clearly know that they were being improperly denied the incidents and benefits of employment to which they were entitled? None of these disputed facts can be resolved solely on the basis of the dates on which plaintiffs' respective Booking Contracts were signed, and none of these disputed facts can be resolved without discovery and evidence.

Id. at 10-11.

WWE asserts that plaintiffs' Proposed Amended Complaint "conveniently alleges 'new facts regarding the two remaining plaintiffs' individualized 'discovery' of their mischaracterization and treatment as independent contractors – allegations that were absent in plaintiffs' original Complaint. See [Proposed Amended Complaint] at ¶¶ 9, 10, 11-14." (Def. Mem. at 8). But what WWE attempts to belittle with rhetorical sarcasm goes to heart of the fairness of the Court's ruling.[4] Plaintiffs were not required in their original state-court Complaint to plead facts responsive to an unasserted state court statute of limitations Special Defense; in the face of defendants' assertion of that defense in this Court on a Rule 12(b)(6) motion to dismiss and in the face of defendant's demand that plaintiff respond to the motion without seeking to amend, plaintiffs alerted the Court to the existence of the factual issues that they now propose to assert.

---

[4] WWE's harsh rhetoric that plaintiffs seek to "circumvent their prior judicial admissions" (Def.Mem. at 14) is unfounded. Plaintiffs do not deny that they signed their Booking Contracts, but rather make the wholly reasonable factual assertion that WWE did not treat them as it represented it would in the Booking Contracts and that they realized, over time, that WWE was not fulfilling its representations. WWE may dispute such allegations, but they are not – on their face – so devoid of credibility as to warrant summary disregard.

8

### III.   Plaintiff's Proposed Amended Complaint Is Not Futile.

Finally, WWE argues that the Court should not allow plaintiffs' proposed Amended Complaint because it is futile.  Plaintiffs have discussed in their Memorandum in support of their Motion (and in their Memorandum in opposition to WWE's Motion to Dismiss) how the factual disputes now raised in the proposed Amended Complaint preclude a ruling as a matter of law dismissing plaintiffs' claims on statute of limitations grounds, under either state law or ERISA. Moreover, to the extent plaintiffs' breach of contract claim was rejected because of lack of specificity of the lost non-ERISA benefits, plaintiff's proposed Amended Complaint precludeds that ground of dismissal.[5]

At this stage, plaintiffs need not establish that all of their claims will ultimately survive, but rather only that they are entitled to an opportunity, through discovery, to develop and prove their factual assertions, so that the claims may be adjudicated not on the basis of WWE's bald assertions, but on the basis of a proper factual record.

---

[5]  Plaintiffs' proposed amended Complaint may be denied as futile only if <u>all</u> of the claims plaintiffs seek to assert would be futile. *See Kassner v. 2d Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

**CONCLUSION**

The principal issue presented by WWE's response to plaintiffs' Rule 59(e) Motion to Alter or Amend is whether this Court will uphold and reward defendants' gamesmanship in preventing plaintiffs from submitting an Amended Complaint with their Memorandum in Opposition to Defendants' Motion to Dismiss. WWE obtained an order from this Court foreclosing plaintiffs from exercising their Rule 15(a) right, as a matter of course, from filing their Amended Complaint and now argue that plaintiffs forfeited their right to amend by failing previously to do so.

Plaintiffs respectfully submit that the Court should not affirm WWE's tactics, and should allow plaintiffs the opportunity to file the Amended Complaint they were previously prevented from filing.

For the foregoing reasons, plaintiffs' Motion to Alter or Amend should be granted and plaintiffs' allowed to file their Proposed Amended Complaint.

PLAINTIFFS

BY_____/s/_____
     DAVID S. GOLUB ct00145
     JONATHAN M. LEVINE ct07584
     SILVER GOLUB & TEITELL LLP
     184 ATLANTIC STREET
     P.O. BOX 389
     STAMFORD, CONNECTICUT 06904
     (203) 325-4491
     (203) 325-3769 (facsimile)
     dgolub@sgtlaw.com
     jlevine@sgtlaw.com

## CERTIFICATION

I hereby certify that on April 17, 2009, a copy of foregoing Plaintiffs' Reply

Memorandum in Support of Motion to Alter or Amend and/or for Relief from Judgment was

filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of

this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system

or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic

Filing.  Parties may access this filing through the Court's CM/ECF System.

_____/s/_____

DAVID S. GOLUB ct00145
SILVER GOLUB & TEITELL LLP
184 Atlantic Street
P. O. Box 389
Stamford, CT 06904
Telephone: 203-325-4491
Fax: 203-325-3769
E-mail:   dgolub@sgtlaw.com

11

**UNREPORTED CASES**

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 1200137 (N.D.N.Y.)
**(Cite as: 2007 WL 1200137 (N.D.N.Y.))**

Page 1

**C**
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
ALLSTATE INSURANCE COMPANY, a/s/o
Thadeusz Jastrzab Jr., Plaintiff,
v.
James E. FLEURY Niagara Mohawk Power Corporation, Defendants,
John Canino Plumbing and Heating, Third Party
Defendant.
**No. 5:99-CV-1261.**

April 20, 2007.

Cozen, O'Connor Law Firm, James P. Cullen, Esq., of counsel, Philadelphia, PA, Cozen, O'Connor Law Firm, Michael J. Sommi, Esq. of counsel, New York, NY, for Plaintiff.

Law Office Of John F. Pfeifer, Esq., Laurie G. Ogden, Esq., James F. Fleury, of counsel, Syracuse, NY, for Defendant, Cross Defendant and Third Party Plaintiff.

Hiscock Barclay Law Firm, Alan R. Peterman, Esq., of counsel, Syracuse, NY, for Defendant and Cross Claimant Niagara Mohawk Power Corporation.

John Canino Plumbing & Heating, John Canino, pro se, Third Party Defendant.

MEMORANDUM DECISION AND ORDER

HOWARD G. MUNSON, SR. J.

**\*1** This subrogation action was brought by Plaintiff Allstate Insurance Company, which insured property owned by Thaddeus Jastrzab, Jr. ("Jastrzab"). On August 23, 1996, a fire took place that caused substantial damage to the Jastrzab residence. Plaintiff sought to recover payments made to its in-sured for damages to his property from Niagara Mohawk Power Corporation, ("NIMO"), and James E. Fleury, ("Fleury"), the adjoining land owner. Plaintiff asserted that the defendants were responsible for the fire that damaged Jastrzab's residence.

The fire started at the Jastrzab home, which is located approximately 165 yards from Fleury's property. Both residences received electric power from a common transformer pole, owned by Defendant Niagara Mohawk. Electric power was provided to Fleury's residence through a 120 volt, two-wire service. He owned this two-wire service, and a meter pole that were located on his property. For many years, an apple tree on his land had grown near and into the two-wire electric service. The tree was never trimmed or prevented from touching the electric wires that supplied his home's electricity.

Approximately ten days before the Jastrzab house fire, the growth of a very large apple crop on the tree partially uprooted it, and caused a limb to come in contact with his electric wires. Fleury asked Niagara Mohawk to correct the problem, but was informed that he owned the electric wires and was responsible for their upkeep. Even though Fleury expressed that he was concerned that the tree limb's touching the wires might cause a fire, no further action was taken, and the tree remained in contact with the wires.

On August 23, 1996, a fire extensively damaged the Jastrzab house. A post fire investigation found that the fire was caused by a phenomenon called an electrical "backfeed," that is defined as a potential of electric power that runs in the wrong direction. Here, the backfeed was caused by a limb of Fleury's apple tree contacting the transmission lines feeding electricity into his home. The backfeed took place when the apple tree limb touched on the old-style two-wire system forcing them into mutual contact. The contact caused a high resistance short circuit which supplied electrical power to both the Fleury and Jastrzab residences.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 1200137 (N.D.N.Y.)
**(Cite as: 2007 WL 1200137 (N.D.N.Y.))**

Page 2

The apple tree limb induced contact between the Fleury wires grounded and energized the neutral line owned by Niagara Mohawk, this excess current caused a major electric load to pass through Niagara Mohawk's transformer and the electric lines supplying the Jastrzab home. Following its natural tendency toward a ground potential, the current also energized the grounding wire and rod at the Jastrzab residence. Although the grounding dissipated some of the excess current, there was still additional current/voltage on the Jastrzab ground. The undissipated electricity heated and energized the ground wire. In this energized state, the wire overheated and caused arching with the roof itself. The uncontradicted testimony of Plaintiff's expert witness, William Patrick, was that it was clear that the backfeed originating from the Fleury property was the overall cause of the Jastrzab fire. He also testified, the fire was intensified by the fact that the Fleury home was not adequately grounded at the time. The correct grounding at the Fleury property could have helped to disburse the backfeed, and would have prevented the Jastrzab fire.

**\*2** On June 18, 2001, this court held a bench trial on this matter. In a decision dated September 12, 2001, the court found that neither defendant was liable for the damages caused by the Jastrzab fire. Currently before the court is Plaintiff's reconsideration motion challenging a portion of the court's Decision and Order in this case.

The Plaintiff does not indicate whether its request for reconsideration is made pursuant to Rule 59 or Rule 60 of the Federal Rules of Civil Procedure. In many cases, the court determine which of these Rules a post-judgment motion was made under. A motion for reconsideration, as a practical matter, is a motion for amendment of judgment under Fed.R.Civ.P. 59(e), as it seeks to reopen a court's decision on the theory that the court made mistaken findings in the first instance. *City of Hartford v. Chase,* 942 F.2d 130, 133-34 (2d Cir.1991). Because of this fact, motions for reconsideration are treated as motions brought pursuant to Fed.R.Civ

.P. 59(e) for purposes of measuring the timeliness of their filing. *United States ex rel. McAllan v. City of New York,* 248 F.3d 48, 52 (2d Cir.2001). The filing of a Rule 59(a) post-judgment motion must be filed within ten (10) days of entry of judgment. *Birdsong v. Wrotenbery,* 901 F.2d 1270, 1272 (5th Cir.1990). The Plaintiff has made a timely filing of its motion in the case at bar.

A Rule 59(e) motion suspends the finality of a judgment for purposes of appeal, and the full time for appeal commences to run anew from the entry of the order disposing of the motion. Fed.R.App .P. 4(a)(iv), *Arnold v. Sullivan,* 131F.R.D.129, 131 (N.D.Ind.1990).

Reconsideration of a court's previous order, however, is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."*In re Health Management Systems Inc. Secs. Litig.,* 113 F.Supp. 613, 614 (S.D.N.Y.2000).

A party bringing a reconsideration motion "must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion." *Fulani v. Brady,* 149 F.R.D. 501, 503 (S.D.N.Y.1993), aff'd *sub nom. Fulani v. Bentsen,* 35 F.3d 49 (2d Cir.1994). A Rule 59(e) motion is not intended as a vehicle for a party dissatisfied with the court's ruling, to advance new theories that the movant failed to advance in connection with the underlying proceeding, nor to secure a rehearing on the merits with regard to issues already decided. *Griffin Indus ., Inc. v. Petrojam, Ltd.,* 72 F.Supp.2d 365, 368 (S.D.N.Y.1999). The Rule is designed to "ensure the finality of decisions and to prevent the practice of a losing party [from] examining a decision and then plugging the gaps of a lost cause with additional matters. *Carolco Pictures, Inc. v. Sirota,* 700 F.Supp.169, 170 (S.D.N.Y.1988). A Court must narrowly construe and strictly apply Rule 59(e), so as to avoid duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute for appealing a final judgment.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 1200137 (N.D.N.Y.)
(Cite as: 2007 WL 1200137 (N.D.N.Y.))

*Shamis v. Ambassador Factors Corp.,* 187 F.R.D. 148, 150 (S.D.N.Y.1999).

**\*3** Plaintiff asserts that the court inaccurately applied the law of negligence and foreseeability to the facts in this case. Plaintiff's objection to the court's decision in this case is restricted to a request that the court "reconsider its proximate cause" finding as it relates to defendant Fleury. Plaintiff challenges the court's finding that the fire at the Jastrzab residence was not a reasonable consequence of Fleury's failure to remove the apple tree limb from his power lines. Plaintiff further maintains that the "precise occurrence" did not have to be foreseeable in order for liability be imposed on Fleury, and that he would have been liable if the fire started at his house, therefore, liability should be imposed for the fire that started 165 yards away.

Negligence is conduct which falls below the standard established by law for the protection of people against unreasonable risk. *Cygan v. City of New York,* 165 A.D.2d 58, 67, 566 N.Y.S.2d 232, 238 (1st Dep't 1991). In order to establish a *prima facie* case of negligence, a plaintiff must demonstrate (1) the existence of a duty on defendant's part as to plaintiff, (2) a breach of this duty, and (3) an injury to the plaintiff as a result thereof. *Akins v. Glens Falls City School District,* 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 648, 424 N.E.2d 531, 535 (1981); *Gaeta v. City of New York,* 624 N.Y.S.2d 47, 48 (2d Dep't 1995).

In this case, the focus of the inquiry is on the foreseeability of the risk. This is an essential element of a fault-based negligence cause of action because the community deems a person at fault only when the injury-producing occurrence is one that could have been anticipated. Further, although virtually every untoward consequence can theoretically be foreseen "with the wisdom born of the event." *Greene v. Sibley, Lindsay & Curr co.,* 257 N.Y. 190, 192, 177 N.E. 416), the law draws a line between remote possibilities, and those that are reasonably foreseeable because "[n]o person can be expected to guard

against harm from events which are ... so unlikely to occur that the risk ... would commonly be disregarded"*Danielenko v. Kinney Rent A Car, supra.*Although the precise manner in which the harm occurred need not be foreseeable, liability does not attach unless the harm is within the class of reasonably foreseeable hazards that the duty exists to prevent. *Di Ponzio v. Riordan,* 89 N.Y.2d 578, 583, 657 N.Y. S.2d 377, 679 N.E.2d 616 (1997).

Plaintiff's reliance on *Derdiarian v. Felix Contracting Corp.* 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166 (1980), and *Homac Corporation v. Sun Oil Company,* 258 N.Y. 462 (1932)in support of its position is misplaced. In *Derdiarian,* the defendant general contractor owed a duty to the plaintiff, an employee of a subcontractor, to provide a safe place to work. In light of that recognized legal relationship between those two parties, the Court of Appeals held that it was for the fact finder to determine whether the general contractor's failure to safeguard the excavation site against the entry of a vehicle into the roadway portion of the work site was a proximate cause of the plaintiff's injuries. *Derdiarian,* at 312; 312-316, 434 N.Y.S.2d 166.

**\*4** In the *Homac Corporation* case, the defendant Sun Oil Company ("Sun Oil") was a distributor of gasoline, and maintained a plant for its storage on its property. Storage tanks designed to hold large quantities of fuel had also been erected on the site. One evening the gasoline in one of the storage tanks exploded, and started a chain reaction which caused other tanks to also explode. The fire, then was "communicated directly to the Plaintiff's premises," and, as it spread across to the property, destroyed many buildings thereon.

A comparison of the facts in *Homac* with those in the instant case, shows that there are essential differences in the events which took place in each one. No fire took place on the Fleury property, he owned a home in the country, as opposed to Sun Oil's operating an urban business of selling and storing vast amounts of an unpredictable and highly volatile gasoline in a large tank farm area, the Fleury and

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 1200137 (N.D.N.Y.)
(Cite as: 2007 WL 1200137 (N.D.N.Y.))

Jastrzab properties were approximately 165 yards apart, while the properties in Sun Oil were only 77 feet from each other, and the fire spread directly from one to the other in a readily foreseeable manner from combustible sources. These determining components in *Homac* certainly presented a clearly foreseeable liability exposure to Sun Oil. However, none of these components were found in the instant case, nor was any foreseeable liability exposure established.

A risk is foreseeable only when it could reasonably be anticipated. *Di Ponzio v. Riordan,* 89 N.Y.2d 578, 657 N.Y. S.2d 377, 679 N.E.2d 616; *Danielenko v. Kinney Rent A Car,* 57 N.Y.2d 198, 455 N.Y.S.2d 555, 441 N.E.2d 1973). This is because the law draws a line between remote possibilities and those that are reasonably foreseeable because [n]o person can be expected to guard against harm from events which are ... so unlikely to occur that the risk ... would commonly be disregarded *Di Ponzio v. Riordan, supra* at 583, 657 N.Y.S.2d 377, 679 N.E.2d 616. Here, the probability that Defendant Fleury could have foreseen that the tree limb touching his power lines might create an electric backfeed fire that damaged the Jastrzab residence, was too tenuous and remote to permit recovery under a negligence cause of action.

Accordingly,

Plaintiff's reconsideration motion is **DENIED.**

**IT IS SO ORDERED.**

N.D.N.Y.,2007.
Allstate Ins. Co. v. Fleury
Not Reported in F.Supp.2d, 2007 WL 1200137 (N.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy                                                                                                     Page 1
Slip Copy, 2008 WL 906843 (D.Conn.)
**(Cite as: 2008 WL 906843 (D.Conn.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
Keith GAITHER p/p/a Rhonda Gaither, and
Rhonda Gaither, Plaintiffs,
v.
THE HOUSING AUTHORITY OF THE CITY OF
NEW HAVEN, Jimmy Miller, individually and in
his official capacity as Executive Director, Maureen
Novak, individually and in her official capacity as
Special Assistant to the Deputy Executive Director,
and David Alvarado, Iiona Leffingwell, Louise
Persall, and Robert Solomon in their official capa-
cities as members of the Housing Authority Com-
mission for the City of New Haven, Defendants.
**No. 3:07-cv-667 (WWE).**

March 31, 2008.

Jennifer C. Vickery, New Haven, CT, for Plaintiffs.

Donn A. Swift, Lynch, Traub, Keefe & Errante,
New Haven, CT, for Defendants.

***RULING ON PLAINTIFFS' EMERGENCY MO-
TION TO RECONSIDER DENIAL OF PRELIM-
INARY INJUNCTIVE RELIEF BASED ON NEW
EVIDENCE, OR TO SUPPLEMENT THE RE-
CORD***

WARREN W. EGINTON, Senior District Judge.

**\*1** Plaintiffs have filed an emergency motion ask-
ing the Court to reconsider its Order Regarding
Emergency Motion for Preliminary Injunctive Re-
lief ordered on September 19, 2007 (Doc. # 59)
based on new evidence, or, in the alternative, to
supplement the record on appeal. For the following
reasons, the Court will deny plaintiffs' motion.

*FACTS*

The underlying facts and identities of the parties are
set forth in this Court's September 19 order and its
Ruling on Plaintiffs' Rule 52 Motion to Amend
Findings, ordered on November 13, 2007 (Doc. #
69). On October 19, 2007, plaintiffs filed a notice
of appeal from the Court's order.

On March 4, 2008, plaintiffs filed the instant mo-
tion asking the Court to reconsider its September 19
order, or, in the alternative, to supplement the re-
cord on appeal with evidence that came to light in
discovery that followed the September 19 order.
Specifically, the evidence that plaintiffs would like
the Court to review includes:

(1) Excerpts from the deposition of William Hein-
richs in which Mr. Heinrichs states that he had
never submitted a request for a rent exception for
plaintiffs to the Department of Housing and Urb-
an Development in Washington D.C.;

(2) Evidence of a search assistance program for
Section 8 participants which, allegedly, would
have assisted in the plaintiffs' housing search;

(3) Evidence that defendants have ceased assisting
plaintiffs in their housing search despite contrary
assurances to the Court;

(4) Evidence that defendants found an appropriate
apartment for plaintiffs but did not permit the
plaintiffs to rent it; and

(5) Evidence that plaintiffs have access to a grant
that would pay for modifications to their home,
but which will soon expire.

Defendants object to plaintiffs' motion on the
grounds that the Court no longer has jurisdiction to
rule on the plaintiffs' motion for a preliminary in-
junction and that the evidence that plaintiffs seek to
introduce was not part of the original record.

*DISCUSSION*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                           Page 2
Slip Copy, 2008 WL 906843 (D.Conn.)
**(Cite as: 2008 WL 906843 (D.Conn.))**

## A. Motion for Reconsideration

Generally, the filing of a notice of appeal divests the trial court of jurisdiction to rule on substantive matters before the court. *See Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance-it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").Federal Rule of Appellate Procedure 4(a)(4)(A)(iv), however, provides that the trial court has jurisdiction to consider a *timely filed* motion for reconsideration even when there is a pending notice of appeal. A motion for reconsideration under rule 59(e) of the Federal Rules of Civil Procedure or rule 7(c) of the Local Rules of Civil Procedure must be filed within ten days of the "filing of the decision or order from which such relief is sought."Fed.R.Civ.P. 59(e); Local Rule 7(c). The failure to timely file a motion for reconsideration divests the court of jurisdiction over the motion. *Hodge v. Hodge,* 269 F.3d 155, 157 (2d Cir.2001) ("[T]he [timely] filing of a notice of appeal does not divest the district court of jurisdiction to decide any of the postjudgment motions listed in Fed. R.App. P. 4(a)(4)(A)....").

**\*2** The Court entered its order from which plaintiffs appeal on September 19, 2007; plaintiffs filed their motion for reconsideration on March 4, 2008, long after the ten-day period had expired. Therefore, the Court will deny plaintiffs' motion as untimely filed to the extent that it is a motion for reconsideration.

## B. Motion to Supplement the Record on Appeal

Rule 10(e) of the Federal Rules of Appellate Procedure provides that:

(1) If any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly.

(2) If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded:

A) on stipulation of the parties;

B) by the district court before or after the record has been forwarded; or

C) by the court of appeals.

(3) All other questions as to the form and content of the record must be presented to the court of appeals.

Rule 10(e) is not meant to allow a party to supplement the record on appeal with new evidence that was not before the trial court. Rather, the purpose of Rule 10(e) is to "correct omissions from-or misstatements in-the record on appeal, not to introduce new evidence in the court of appeals." *Schreier v. Weight Waters Northeast Region,* 872 F.Supp. 1, 3 (E.D.N.Y.1994). The moving party must therefore establish that the evidence with which is seeks to supplement the record was "before the lower court in the course of its proceedings leading to the judgment under review and was mistakenly omitted from the record." *Xiao v. Continuum Health Partners, Inc.,* 2002 U.S. Dist. LEXIS 23673, \*3, 2002 WL 31760213 (S.D.N.Y. Dec. 9, 2002); *see also* J. Moore, *20 Moore's Federal Practice* § 310.40[1][c] ("While Appellate Rule 10(e) grants the district and circuit courts latitude in correcting the record, it does not authorize the addition of new material.").

Because the material that plaintiffs seek to introduce into the record was not before the Court at the time of the decision on their Motion for Preliminary Injunction, it would be inappropriate to supplement the record on appeal with the items submitted by them at this stage.

*CONCLUSION*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                        Page 1
Not Reported in F.Supp.2d, 2002 WL 1627601 (D.Conn.)
**(Cite as: 2002 WL 1627601 (D.Conn.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
Markos PAPPAS, Plaintiff,
v.
NEW HAVEN POLICE DEPARTMENT, et al.,
Defendants.
**Civ. No. 3:98 CV 981(HBF).**

June 4, 2002.

### RULING ON DEFENDANT'S MOTION FOR RECONSIDERATION

HOLLY B. FITZSIMMONS, Magistrate Judge.

*1 On November 14, 2001, this court denied the City of New Haven's motion for partial summary judgment on plaintiff's municipal liability count. [Ruling, doc. # 66.] [FN1] The City of New Haven ("City") now moves this court for reconsideration of that ruling. For the reasons stated herein, the court GRANTS the motion for reconsideration [doc. # 67] but DENIES the relief apparently [FN2] sought therein.

> FN1. This ruling was docketed by the Clerk's office on November 16, 2001. Pursuant to D. Conn. L. Civ. R. 9(e), the City had ten days, excluding weekends and holidays, see Fed.R.Civ.P. 6(a), to file its motion for reconsideration. Accordingly, the City's motion is timely.

> FN2. The court uses the term "apparently" because nowhere in the City's two-and-a-half-page motion does the City request any particular relief. The court assumes that the City would have this court vacate its November 14 opinion and grant the City's motion for partial summary judgment.

Preliminarily, the City has failed to submit a memorandum of law in support of its motion for reconsideration. Pursuant to Local Rule 9(e), all "[m]otions for reconsideration ... shall be accompanied by a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order."D. Conn. L. Civ. R. 9(e)(1). The "[f]ailure to submit a memorandum may be deemed sufficient cause to deny the motion."D. Conn. L. Civ. R. 9(a)(1).See also D. Conn. L. Civ. R. 9(e)(2) ( "motions for reconsideration shall proceed in accordance with Rule 9(a)").

While the motion can be denied on these grounds alone, the court will not do so. Instead, the court grants the motion, but adheres to its original ruling because the City has not set forth any controlling decisions or new facts which would alter the outcome of the court's November 14 ruling. In its motion, however, the City did make several brief arguments, which the court will address.

Initially, the City characterizes the court's ruling as holding "that the plaintiff has asserted a sufficient claim that the City of New Haven engaged in at least a tacit custom or policy of *deliberate* indifference, due [sic] inadequate training, for the specific potential that New Haven Police Officers would knowingly or recklessly disregard a judge's decision that no probable cause exists."[Mot. Recons. at 1 (emphasis in original).] Although it is unclear what the City means by "policy of *deliberate* indifference ... for the specific potential," the court nevertheless believes that the City misunderstands the opinion. To the extent the City implies that this court held that plaintiff is entitled to *prevail* on the municipal liability count, the City is incorrect and, in fact, the court specifically disclaimed such an interpretation in its November 14 ruling.

In a motion for summary judgment, the burden is on the moving party to establish that there are *no genuine issues of material fact in dispute* and that it

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1627601 (D.Conn.)
**(Cite as: 2002 WL 1627601 (D.Conn.))**

Page 2

is entitled to *judgment as a matter of law.*
*See*Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby,
Inc.,* 477 U.S. 242, 256 (1986); *White v. ABCO En-
gineering Corp.,* 221 F.3d 293, 300 (2d Cir.2000).
In determining whether the moving party has met
that burden, the court "must first resolve all ambi-
guities and draw all inferences in favor of the non-
moving party, and then determine whether a ration-
al jury could find for that party." *Graham v. Long
Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000)."If reas-
onable minds could differ as to the import of the
evidence, ... and [i]f ... there is any evidence in the
record from any source from which a reasonable in-
ference in the [nonmoving party's] favor may be
drawn, the moving party simply cannot obtain a
summary judgment." *R.B. Ventures, Ltd. v. Shane,*
112 F.3d 54, 59 (2d Cir.1997) (internal quotation
marks and citation omitted). In addition, where one
party is proceeding *pro se,* the "court[ ] must con-
strue *pro se* pleadings broadly, and interpret them
'to raise the strongest arguments that they suggest.'
" *Cruz v. Gomez,* 202 F.3d 593, 597 (2d
Cir.2000)(quoting *Graham v. Henderson,* 89 F.3d
75, 79 (2d Cir.1996)). In its November 14 ruling,
the court simply held that "the City has not met [its]
burden." [Ruling at 7.]

**\*2** The City also argues that the court held that
plaintiff "asserted a sufficient claim ... despite un-
contradicted (and even conceded) evidence that
training in the New Haven Police Department
meets and even exceeds all training required by
law."[Mot. Recons. at 1-2.] Putting aside the City's
mischaracterization of the court's holding, the court
notes that the United States Constitution is a source
of "law"-indeed, the *supreme* source of law-to
which police officers must conform their conduct.
*See*U.S. Const. art. VI ("This Constitution ... shall
be the supreme Law of the Land"); *Marbury v.
Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60
(1803) (Marshall, C.J.) (holding that the Constitu-
tion is the "supreme Law of the Land" and "the
fundamental and paramount law of the nation").
Thus, to the extent the City criticizes the court for
holding that a municipality may be held liable for

the "deprivation of ... rights, privileges, or im-
munities secured by the Constitution and laws" of
the United States, 42 U.S.C. § 1983, despite the
municipality's conformity with state and local laws
regarding police training, the City's criticism is un-
founded and the court stands by its original opin- ion.

The City makes three brief additional points in its
motion for reconsideration. It first argues that this
court's "sweeping conclusion ... is inconsistent with
numerous rulings in this judicial district."[Mot. Re-
cons. at 2.] Because the City did not file a memor-
andum of law, no analysis of these cases is
provided. The city did note, however, that it
"append[ed] ..., and incorporate[d] by reference,
three rulings involving the City of New Haven" on
purportedly similar issues. Despite the City's lack
of analysis of these apparently unpublished de-
cisions, the court has considered each one.[FN3]

> FN3. While a decision from one judge
> within the District of Connecticut is not
> binding on another judge in that district,
> *see In re Carrozzella & Richardson,* 255
> B.R. 267, 272 (Bankr.D.Conn.2000)
> (citing *Threadgill v. Armstrong World In-
> dustries, Inc.,* 928 F.2d 1366 (3d
> Cir.1991)), it would be considered persua-
> ive. *See F.D.I.C. v. Healey,* 991 F.Supp. 53
> 55 n. 1 (D.Conn.1998) ("While this Court
> must follow circuit court precedent, de-
> cisions of other district judges within the
> district are not binding or authoritative, al-
> though such decisions do have persuasive
> effect ...; [but, a]lthough district judges
> within a particular circuit will frequently
> find each other's decisions persuasive, they
> remain free to disagree") (citing *Spear v.
> Town of West Hartford,* 789 F.Supp. 80, 84
> (D.Conn.1992); *Hawkins v. Steingut,* 829
> F.2d 317, 321 (2d Cir.1987)). In fact, the
> City cites no "controlling decisions," D.
> Conn. L. Civ. R. 9(e)(1), with which this
> court's decision is allegedly inconsistent.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1627601 (D.Conn.)
**(Cite as: 2002 WL 1627601 (D.Conn.))**

Page 3

First, the City cites and appends the case of *Kenneth Smith v. City of New Haven, et al.,* Civil No. 3:99CV157 (EBB), Ruling on Defendant's Motion for Summary Judgment, filed August 20, 2001, pages 13-14. In that case, Judge Burns held, *inter alia,* that the city's affidavit made it clear that the city did not have a custom or policy of racial profiling, of arresting or prosecuting individuals without probable cause, of detaining individuals without reasonable suspicion, or of violating citizens' constitutional rights. *Id.* at 13.The court believed that "it would be an insurmountable barrier for [the plaintiff] to produce admissible evidence on his claims against the City."*Id.* at 13-14.That case is distinguishable on its facts.

Unlike the plaintiff in *Smith,* who apparently attempted to show that the city was liable for its alleged policies condoning various affirmative acts, plaintiff in this case bases his claim on municipal *inaction* and a policy or custom of *failing* to train in a specific area that warrants training. Indeed, plaintiff relies on the City's very inability to produce specifically relevant training documents as evidence that no such training existed. The plaintiff in *Smith* appears to have made no such claims and, therefore, the court had no occasion to discuss the *Walker* factors in that case.[FN4]Unlike the plaintiff in *Smith,* who produced no affirmative evidence to support his affirmative claims, plaintiff in this case has demonstrated an absence of documentation that arguably supports his negative claims.

> FN4.*See Walker v. City of New York,* 974 F.2d 293, 297-98 (2d Cir.1992).

**\*3** The City next cites *Thomas Daniels v. City of New Haven, et al.,* Civil No. 3:97CV564 (RNC), Ruling and Order, filed April 28, 2001, pages 10-12. In *Daniels,* the plaintiff originally alleged in his complaint that the city "maintained and condoned a custom of depriving individuals, such as the plaintiff, of their constitutional rights."*Id.* at 10.In response to the city's motion for summary judgment, however, the plaintiff changed his theory of liability to one in which the city would be liable

for inadequate training, as opposed to affirmative actions. *See id.* at 10, 11.Yet, the plaintiff relied on conclusory claims in his brief. Judge Chatigny specifically noted that plaintiff showed "no evidence that the City failed to train its police officers to avoid violations of Fourth Amendment rights or that such violations were so pervasive as to imply deliberate indifference on the part of policymakers."*Id.* at 11.This court, in its November 14 ruling, likewise noted that plaintiff "may not rely on mere conclusory allegations concerning the existence of a municipal policy," and that he was required to "proffer at least some credible evidence of the failure to train or supervise."[Ruling at 8-9.] Unlike the plaintiff in *Daniels,* however, plaintiff here submitted a detailed affidavit listing all the allegedly policy-related documents that he received in discovery from the city and averring that none of these documents demonstrated any training with respect to the specific issue in this case. Therefore, this court cannot say with the confidence of the *Daniels* court that defendant has met its burden of showing that it is entitled to judgment as a matter of law.

Finally, the City cites *Anthony McBride v. City of New Haven, et al.,* Civil No. 3:97CV1475 (AWT), Ruling on Motion for Summary Judgment, filed March 30, 2000, pages 15-17. Like the plaintiffs in the other cases mentioned by the City, the plaintiff in *McBride* did "no more than simply assert that such a policy existed."*Id* . at 16.Accordingly, Judge Thompson, relying on the rule that a "non-moving party may not rely on mere conclusory allegations," which this judge also acknowledged (but held inapplicable based on Pappas's factual showing), decided that the defendant there was entitled to judgment as a matter of law.

In addition to arguing the relevance of the aforementioned cases, the City contends that "the Court's theory would effectively require a municipality to anticipate and give *precise* training with respect to literally every conceivable eventuality and officer."[Mot. Recons. at 2.] Because this sentence is

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1627601 (D.Conn.)
**(Cite as: 2002 WL 1627601 (D.Conn.))**

Page 4

the City's second argument in its entirety, it is not clear which "theory" the City references or why it requires what the City suggests. The court assumes the City is still referring to its erroneous interpretation of the court's holding.

However, the court did not approve any theory of liability; it simply held that this issue could not be resolved by way of summary judgment. A jury will eventually decide this issue, and it may decide that the City should not be held liable. In fact, this court attempted to explain to both the pro se plaintiff and the City that a finding for the City by the jury might even be *likely*. The court stated:

**\*4** Of course, this Court is not deciding that Pappas is entitled to prevail on his municipal liability count. On the contrary, Pappas may indeed find it difficult to prevail on a theory largely unsubstantiated by affirmative tangible evidence. The Court merely holds that neither party is entitled as a matter of law to prevail on Count Six. The fact finder must eventually determine whether, as a factual matter, the police officers' training and supervision was inadequate. *Cf. Turpin,* 619 F.2d at 201 ("The issue of authorization, approval or encouragement is generally one of fact, not law"). Pappas has shown only that he is entitled to present this issue before a jury.

[Ruling at 15.] Given these cautions, it is difficult to understand how this court's decision to allow a jury to decide this issue will have the tremendous negative impact on the law that the City claims.

Finally, the City argues that:

[I]t is undisputed that New Haven Officers received numerous hours of training in all police procedures and requirements of law for, but not limited to, stops searches and arrests, and that such training meets and often exceeds State law requirements, and further, that it is the very essence of *law enforcement and law enforcement training* that law enforcement officers enforce and obey the laws. Indeed, they are sworn to uphold the laws and consti-

tutions of the United States and the State of Connecticut.

Thus it would be superfluous to require separate training to inform an officer that once a Judge specifically rules that probable cause is absent the individual officer cannot unilaterally disregard the Judge's ruling.

[Mot. Recons. at 3 (emphasis in original).]

The City seems to be claiming that because law enforcement officers enforce laws and because they are sworn to uphold laws, they need not be trained on any specific aspect of constitutional law. In the alternative, the City may be claiming that, given the existing training, no police officer might think it best to stop and/or arrest a target of a search warrant in the face of a judge's limitation on the search or seizure of the person in that warrant. However, a jury could conclude that training in this area is not "superfluous" given the facts of this case. Moreover, the City has brought nothing to the attention of the court that shows, as a matter of law, that a plaintiff cannot prevail on a claim that a municipality failed to train its officers on a specific and important area of the law. In any event, these arguments were specifically addressed by this court in applying the *Walker* test in its November 14 ruling. The City provides no new facts or controlling authority to demonstrate that this analysis is incorrect.

The issue of whether to award summary judgment on the municipal liability count was a close one, hence the court's caution that its ruling did not imply that plaintiff was likely to prevail at trial. However, drawing all inferences in favor of this pro se plaintiff, the court could not hold that *no* reasonable minds could differ as to the import of the evidence. There is at least some evidence in the record from which a reasonable inference in plaintiff's favor could be drawn, thereby precluding summary judgment. *See R.B. Ventures,* 112 F.3d at 59.

**\*5** A court should grant or award relief on a motion

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1627601 (D.Conn.)
**(Cite as: 2002 WL 1627601 (D.Conn.))**

for reconsideration "only if the moving party presents [factual] matters or controlling decisions the court overlooked that might materially have influenced its earlier decision." *Horsehead Resource Development Co., Inc. v. B.U.S. Environmental Services, Inc .,* 928 F.Supp. 287, 289 (S.D.N.Y.1996) (quotation marks and citations omitted; brackets in original)."Moreover, a motion for reconsideration may not be used to plug gaps in an original argument ... or 'to argue in the alternative once a decision has been made.' " *Id.* (quotation marks and citations omitted). In this case, the City has submitted no memorandum of law, presents no overlooked controlling authority, supplies no new facts, and attempts to rely on unpublished decisions that could have been submitted prior to the court's original decision but simply were not. While the court GRANTS the motion for reconsideration [doc. # 67], upon reconsideration, the court DENIES any relief sought by the City, and adheres to its earlier decision, which denied summary judgment on count six.

D.Conn.,2002.
Pappas v. New Haven Police Dept.
Not Reported in F.Supp.2d, 2002 WL 1627601 (D.Conn.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d                                                        Page 1
Not Reported in F.Supp.2d, 2006 WL 1168446 (D.Conn.)
**(Cite as: 2006 WL 1168446 (D.Conn.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
UNITED STATES ex rel., Robert C. Smith, M.D.,
Plaintiff,
v.
YALE UNIVERSITY; Yale-New Haven Hospital,
Inc., New York Presbyterian Hospital and Cornell
University Joan and Sanford I. Weill Medical Col-
lege, Defendants.
**No. 3:02CV1205(PCD).**

April 28, 2006.

John B. Hughes, Richard M. Molot, U.S. Attorney's
Office, New Haven, CT, Stephen M. Kohn, Kohn,
Kohn & Colapinto, LLP, Washington, DC, for
Plaintiff.

David S. Poppick, Jonathan M. Plissner, Epstein,
Becker & Green, P.C., Stamford, CT, Stuart M.
GersonEpstein, Becker & Green, P.C., Washington,
DC, Christopher J. Porzio, Gary P. Schulz, Nixon
Peabody LLP, Garden City, NY, James R. Kahn,
Weill Medical College of Cornell University, New
York, NY, Nelson E. Roth, Cornell University
Deputy University Counsel, Valerie L. Cross, Cor-
nell University Associate University Counsel,
Ithaca, NY, Stacie Boeniger Collier, Nixon Pe-
abody LLP, Hartford, CT, for Defendants.

*RULING ON PLAINTIFF'S MOTION TO TRANS-
FER AND, ALTERNATIVELY, MOTION TO AL-
TER OR AMEND JUDGMENT TO PERMIT
TRANSFER*

DORSEY, J.

**\*1** Plaintiff moves, pursuant to 28 U.S.C. §§
1404(a) and 1406(a), to transfer the claims alleged
in the Third Amended Complaint against the New

York-based Defendants, New York Presbyterian
Hospital ("NYPH") and Cornell University Joan
and Sanford I. Weill Medical College ("Cornell"),
to the United States District Court for the Southern
District of New York. Alternatively, Plaintiff
moves, pursuant to Rules 59(e) and 60(b)(6) of the
Federal Rules of Civil Procedure, to alter or amend
the District Court's Ruling on Motions to Dismiss,
entered on March 7, 2006, in order to permit trans-
fer of Plaintiff's claims against the New York-based
Defendants to the Southern District of New
York.[FN1]For the reasons stated herein, Plaintiff's
Motion [Doc. Nos. 133, 134] is granted.

> FN1. Because Plaintiff cannot move to
> transfer claims that have already been dis-
> missed, Plaintiff's motion will be treated as
> a Motion for Reconsideration pursuant to
> Local Rule of Civil Procedure 7(c) or as a
> Motion to Alter or Amend the Judgment
> pursuant to Fed.R.Civ.P. 59(e)."Motions
> for reconsideration under [D. Conn. L.R.
> Civ. P. 7(c) ] are as a practical matter the
> same thing as motions for amendment of
> judgment under Fed.R.Civ.P. 59(e)-each
> seeks to reopen a district court's decision
> on the theory that the court made mistaken
> findings in the first instance. As such ... a
> motion under [D. Conn. L.R. Civ. P. 7(c) ]
> must be treated the same as a motion under
> Rule 59[ (e) ]." *City of Hartford v. Chase,*
> 942 F.2d 130, 133 (2d Cir.1991).

I. BACKGROUND

On March 7, 2006, this Court issued its Ruling on
Defendants' Motion to Dismiss, dismissing all
claims against defendants NYPH and Cornell for
lack of jurisdiction and venue. *SeeSmith v. Yale
Univ.,* No: 3:02cv1205 (PCD), 2006 U.S. Dist.
LEXIS 12304 (D.Conn. Mar. 7, 2006). A final
judgment of dismissal was entered by the Clerk on
April 18, 2006. *See* Final J. [Doc. No. 141].

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1168446 (D.Conn.)
**(Cite as: 2006 WL 1168446 (D.Conn.))**

Page 2

In this False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *etseq.,* action, Plaintiff filed claims against Defendants Yale University ("Yale"), Yale-New Haven Hospital ("YNHH"), NYPH and Cornell. *See* 3d Am. Compl. Plaintiff's claims against Yale were dismissed pursuant to a Stipulation of Dismissal filed by Plaintiff and Yale on August 4, 2005. *See* Stip. Dismissal [Doc. No. 103]. Plaintiff's claims against YNHH in this action were dismissed in the March 7, 2006 Ruling on the grounds that (1) Plaintiff failed to establish subject matter jurisdiction pursuant to 31 U.S.C. § 3730(e)(4)(A), the FCA's public disclosure bar which requires the person bringing a FCA action to be the original source of the information upon which the complaint is based; and (2) Plaintiff failed to satisfy Rule 9(b)'s heightened pleading requirement for fraud claims. *SeeSmith,* 2006 U.S. Dist. LEXIS 12304 at *3-15.

In granting NYPH and Cornell's motions to dismiss for lack of jurisdiction and venue, this Court held that all of Plaintiff's claims against these New York-based Defendants were founded on acts and conduct committed in the State of New York and that none of the acts constituting the basis for Plaintiff's claims against NYPH and Cornell occurred within the District of Connecticut or had any effect in Connecticut. *Seeid.* at *15-22.The Court declined to rule on Defendant NYPH and Cornell's arguments that Plaintiff failed to plead with particularity as required by Rule 9(b), that Plaintiff failed to state a claim pursuant to Rule 12(b)(6) or that the court lacked subject matter jurisdiction pursuant to 31 U.S.C. § 3730(e)(4)(A) on the basis that "[t]he dismissal of the case on jurisdictional and venue grounds renders it unnecessary to resolve the issues thus raised."*Id.* at *21.

## II. STANDARD OF REVIEW

*2 Reconsideration under Local Rule 7(c) or altering or amending the judgment under Rule 59(e) will generally only be granted when a party can point to "an intervening change of controlling law, the availability of new evidence, or the need to correct

a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992) (citations omitted) (cautioning that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again"); *see also Munafo v. Metropolitan Transp. Auth.,* 381 F.3d 99, 105 (2d Cir.2004) ("district courts may alter or amend judgment [pursuant to Rule 59(e) ] to correct a clear error of law or prevent manifest injustice") (citation omitted). Reconsideration should therefore be granted when a "party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). Reconsideration will not be granted, however, "where the moving party seeks solely to relitigate an issue already decided," to "plug gaps in an original argument or to argue in the alternative once a decision has been made."*Id.; Horsehead Res. Dev. Co., Inc. v. B.U.S. Envtl. Serv., Inc.,* 928 F.Supp. 287, 289 (S.D.N.Y.1996) (citations omitted). Ultimately, however, the question is a discretionary one and the court is not limited in its ability to reconsider its own decisions prior to final judgment. *See Virgin Atl.,* 956 F.2d at 1255.

## III. DISCUSSION

Plaintiff argues, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), that transfer rather than dismissal of an action is appropriate where there is a lack of venue and personal jurisdiction in the chosen forum. Plaintiff contends that if his Motion to Transfer is denied, he will be prejudiced by the fact that "most" of his claims against the Defendants NYPH and Cornell will be barred by the applicable statutes of limitations.[FN2]Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."28 U.S.C. § 1404(a).Section 1406(a) provides that "the district

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1168446 (D.Conn.)
**(Cite as: 2006 WL 1168446 (D.Conn.))**

Page 3

court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."*Id.* § 1406(a)."Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *Minnette v. Time Warner,* 997 F.2d 1023, 1026-1027 (2d Cir.1993).

> FN2. Specifically, Plaintiff will be unable to file his FCA whistleblower retaliation claim as well as most of his New York state law claims, including his defamation claim, intentional infliction claim, negligent infliction claim and claim alleging violation of N.Y. C.L.S. Labor § 741, due to the applicable statutes of limitations.

Under both §§ 1404(a) and 1406(a), Plaintiff must show that transfer is "in the interest of justice" and that the action "might" or "could" have been brought in the transferee court. 28 U.S.C. §§ 1404(a), 1406(a)."The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 915, 8 L.Ed.2d 39 (1962); *see also Fresca v. Arnold,* 595 F.Supp. 1104, 1105 (E.D.N.Y.1984) ("a district court need not elect between [§ 1404(a) and § 1406(a) ]; it has power to transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in [the] district, if a transfer would be in the interest of justice"). Although courts have held that the threshold question when deciding a plaintiff's § 1404(a) motion to transfer is whether plaintiff has shown a "change in circumstance" since the complaint was filed sufficient to warrant transfer, *Anglo Am. Ins. Group, P.L.C. v. CalFed Inc.,* 916 F.Supp. 1324, 1327-1330 (S.D.N.Y.1996), an action may also be transferred if it is "in the interest of justice" to do so, even if

Plaintiff can show no change in circumstances justifying transfer. *See Corke v. Sameiet M.S. Song,* 572 F.2d 77, 80 (2d Cir.1978); *see also Gipromer v. SS Tempo,* 487 F.Supp. 631, 632-635 (S.D.N.Y.1980) (following the Second Circuit's holding in *Corke* that transfer is appropriate if it is "in the interest of justice" and transferring the case after balancing the relative hardships to the parties).

**\*3** Applying *Corke* and *Gipromer,* it is found that transfer, rather than dismissal, would serve the interest of justice. As in those cases, the refusal to transfer this case would result in serious prejudice to Plaintiff, for many of Plaintiff's claims, if re-filed in New York, would be barred by the applicable statutes of limitations.<sup>FN3</sup>*See* Pl's Mot. Transfer at 6-8; *see also Minnette,* 997 F.2d at 1027 (recognizing that "the functional purpose of 28 U.S.C. § 1406(a) is to eliminate impediments to the timely disposition of cases and controversies on their merits" and holding that an action should have been transferred to the proper district, rather than dismissed, where the statute of limitations could bar commencement of a new action); *Bolar v. Frank,* 938 F.2d 377, 380 (2d Cir.1991) (per curiam) (holding that the Court of Appeals has authority under Section 1406(a), "in the interest of justice," to transfer a case dismissed by the district court for lack of venue to the proprer district where the plaintiff's claims might be time-barred upon re-filing); *Gipromer,* 487 F.Supp. at 633 (holding that transfer was in the interest of justice since a new action filed in the proper district would be barred by the applicable statute of limitations). At the same time, transfer would work no hardship on Defendants' ability to defend against the claim on the merits. NYPH and Cornell are both New York entities and presumably will find it easier to defend a suit in New York than in Connecticut. Indeed, both Defendants argued that transfer to the Southern District of New York would be appropriate in prior filings with this Court. *See* Cornell's Mem. Supp. Mot. Dismiss [Doc. No. 91] at 49-55; NYPH's Mem. Supp. Mot. Dismiss [Doc. No. 93] at 4-12.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1168446 (D.Conn.)
(Cite as: 2006 WL 1168446 (D.Conn.))

Page 4

FN3. Although Plaintiff's FCA fraud claims are still timely, his retaliation claims under the Act are now time-barred pursuant to a recent Supreme Court decision which held that whistleblower retaliation claims under the False Claims Act must be brought within the time allowed by the most closely analogous state law limitations period. *See Graham County Soil & Water v. United States ex rel. Wilson,* 545 U.S. 409, 125 S.Ct. 2444, 162 L.Ed.2d 390 (2005). Prior to the *Graham County* decision, the Circuits were divided as to whether or not the six-year limitations period available for a fraud claim under the Act was also applicable to a retaliation claim. Although this decision was pending when Plaintiff was arguing against transfer, it remains the case that this is an "intervening change of controlling law."

According to Cornell, the "majority of the causes of action set forth in the pleading are tort, contract and statutory claims based on New York substantive law and they are directed solely at the New York-based defendants."Cornell's Mem. Supp. Mot. Dismiss at 50. Moreover, Cornell asserts that "[a]ll of the witnesses and all of the documentary evidence relating to plaintiff's claims against Cornell are located in New York."*Id.* Similarly, NYPH asserts that "all witnesses, documents, or anything else material to this case or its prosecution may be found in the Southern District of New York" and that "[n]o act cited as to NYPH took place outside of New York."NYPH's Mem. Supp. Mot. Dismiss at 2, 4. Cornell, weighing the factors relevant to the determination of whether transfer is appropriate,[FN4] concluded that "the convenience of the witnesses and the interests of justice compel that action against Cornell be severed and transferred to New York."Cornell's Mem. Supp. Mot. Dismiss at 50-55. Although transfer will deprive Defendants of their defense of lack of personal jurisdiction, that factor carried little weight in *Corke* and *Gipromer* and carries little weight here.

FN4. The factors to be considered in assessing whether transfer is appropriate are: "(1) the location of the events giving rise to the suit, (2) the convenience of the parties, (3) the convenience of the witnesses, (4) the relative ease of access of proof, (5) the availability of process for unwilling witnesses, (6) plaintiff's choice of forum, (7) a forum's familiarity with the governing law, (8) trial efficiency, and (9) the interest of justice." *O'Brien v. Okemo Mountain, Inc.,* 17 F.Supp.2d 98, 103-04 (D.Conn.1998).

*4 Defendants cite *Spar, Inc. v. Information Res. Inc.,* 956 F.2d 392 (2d Cir.1992), in support of their claim that "the interest of justice analysis is not a vehicle for resurrecting a claim lost because the plaintiff erred in its initial choice of forums." *Id.* at 395 (internal quotation marks, brackets, and citations omitted). That case, however, was based on facts different than those at issue here. In *Spar, Inc.,* the Second Circuit recognized that " § 1406 should be read liberally" and that transfer may be permissible if in the "interest of justice." *Id.* at 395.The Court upheld the district court's decision not to transfer, however, because the plaintiff was blatantly attempting to forum shop in order to resurrect its claim in a more favorable forum. Specifically, the plaintiff wanted to transfer the case from the Southern District of New York to the Northern District of Illinois because Illinois' relevant limitations period-which is longer than New York's-would enable the plaintiff to pursue the action on the merits. *Id.* at 392.That is not the case here. Plaintiff is not trying to avoid Connecticut's statute of limitations; he is only trying to prevent his action being dismissed on statute of limitations grounds because it has been pending for in this district for almost four years and would now be barred by the New York statute of limitations if re-filed there.[FN5]As noted above, the Second Circuit has recognized, more than once, that transfer on this basis is in the "interest of justice." *See Minnette,* 997 F.2d at 1027; *Bolar v. Frank,* 938 F.2d at 380.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1168446 (D.Conn.)
**(Cite as: 2006 WL 1168446 (D.Conn.))**

Page 5

> FN5. Cornell also cites *In re Ski Train Fire in Kaprun, Australia,* 224 F.R.D. 543, 545 (S.D.N.Y.2004) in support of its argument against transfer. That case, however, also involved a plaintiff attempting to avoid the impact of the statute of limitations in the chosen forum by seeking transfer to the Northern District of California where the claims would be timely under that forum's law. *Seeid.*Again, that is not the situation presented here.

Having established that transfer is "in the interest of justice," Plaintiff must next show that the action "might" or "could" have been brought in district court in New York. 28 U.S.C. §§ 1404(a), 1406(a); *see also Gipromer,* 487 F.Supp. at 633.That is, Plaintiff must show that venue and subject matter jurisdiction lay in New York on July 12, 2002, the date this suit was commenced, and that NYPH and Cornell were subject to personal jurisdiction there. *Gipromer,* 487 F.Supp. at 633.This fact is not contested. Indeed, Defendants themselves argued that venue and subject matter jurisdiction lay in New York in their motions to dismiss. *See* Cornell's Mem. Supp. Mot. Dismiss at 51 (arguing that the "Southern District of New York is an appropriate transferee forum with respect to the claims against Cornell" and asserting that "venue would have been proper" there); NYPH's Mem. Supp. Mot. Dismiss at 11 (asserting that the only "appropriate [transferee] forum for NYPH would be the Southern District of New York").

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration [Doc.Nos. 133, 134] is granted and the prior Ruling, insofar as it dismisses the claims against NYPH and Cornell, is vacated. Plaintiff's claims against NYPH and Cornell are hereby transferred to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

**\*5** SO ORDERED.

D.Conn.,2006.
U.S. ex rel. Smith v. Yale University
Not Reported in F.Supp.2d, 2006 WL 1168446 (D.Conn.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.